UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

| | | |
|---|---|---|
| **CASE NO.:** | <u>CV 5:18-00839 SJO (ASx)</u> | **DATE:** <u>January 11, 2019</u> |
| **TITLE:** | <u>Mary H. Garcia et al v. County of Riverside et al.</u> | |

========================================================================
**PRESENT: THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| Victor Paul Cruz | Not Present |
| Courtroom Clerk | Court Reporter |

**COUNSEL PRESENT FOR PLAINTIFFS:**   **COUNSEL PRESENT FOR DEFENDANTS:**

Not Present                            Not Present

========================================================================
**PROCEEDINGS (in chambers): ORDER DENYING DEFENDANTS' MOTION TO DISMISS** [Docket No. 69].

This matter is before the Court on Defendants Sargent Ayala, Deputy Figueroa, Deputy Pearson, Deputy Lopez, Deputy Cordero, Deputy Llanos, Deputy Hinson, Deputy Caverley, Deputy Rodarteo-Lugo, Deputy Miranda, Deputy Varoni, Deputy Maldonado, Deputy Kramer, Deputy Tarango, Deputy Steele, Deputy Bergert, and Deputy Tesillo's (collectively, "Defendants") Motion To Dismiss Plaintiff Mary H. Garcia's Second Amended Complaint ("Motion"), filed November 14, 2018. Plaintiff opposed the Motion on December 17, 2018. Defendants filed a Reply on December 19, 2018. For the following reasons, the Court **DENIES** the Motion.

I.  FACTUAL AND PROCEDURAL BACKGROUND

   A.  Procedural Background

On April 23, 2018, Plaintiffs filed a Complaint in this Court asserting causes of action for: (1) deliberate indifference to serious medical needs in violation of 42 U.S.C. § 1983 ("Section 1983"); (2) cruel and unusual punishment in violation of Section 1983; (3) deprivation of the right to association protected by the Fourteenth Amendment to the U.S. Constitution; (4) use of excessive force in violation of the Fourth, Fourteenth, and Fifteenth Amendments; (5) failure to intervene in violation of Section 1983; (6) failure to properly train deputies in violation of Section 1983; (7) failure to supervise and discipline deputies and medical staff in violation of Section 1983; (8) *Monell* municipal liability; (9) failure to protect and cruel and unusual punishment; (10) violation of the Americans With Disabilities Act; (11) wrongful death under California law; (12) violation of California Civil Code § 52.1; (13) negligence under California law; (14) assault and battery; (15) false arrest in violation of Section 1983. (*See* Compl., ECF No. 1.)

On June 28, 2018, Plaintiffs filed a First Amended Complaint ("FAC"), adding eighteen deputies from the Riverside County Sheriff's Department ("Deputies") as defendants. (*See* FAC, ECF No.19.) On July 12, 2018, County Defendants moved to dismiss the sixth, seventh, eighth, tenth, eleventh, twelfth, and thirteenth claims against them. (*See* County Mot., ECF No. 38) On July 13,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority  _____
Send      _____
Enter     _____
Closed    _____
JS-5/JS-6 _____
Scan Only _____

**CASE NO.:** CV 5:18-00839 SJO (ASx)　　　　**DATE:** January 11, 2019

2018, the parties stipulated to dismiss without prejudice Plaintiffs' eighth claim for *Monell* municipal liability against Defendant Cathedral only. (Stip. to Dismiss Plaintiff's Eight Claim, ECF No. 39.) On July 18, 2018, City Defendants moved to dismiss the first, second, third, eleventh, twelfth, and fifteenth claims against them, as well as the prayers for punitive and emotional damages in the thirteenth claim. (*See* City Mot., ECF No. 40.)

On August 13, 2018, the Court declined to accept supplemental jurisdiction over the state law claims, thereby severing and dismissing Plaintiffs' eleventh, twelfth, thirteenth, and fourteenth claims for wrongful death, negligence, violation of Civil Code § 52.1, and assault and battery. (*See* Minutes of Scheduling Conference, ECF No. 57.)

On August 29, 2018, the Court dismissed certain of the supervisor Defendants from this action. The Court: (1) dismissed Plaintiffs' claim against Officer Defendants (Anes, Brooks, and Buehler) for deliberate indifference to serious medical needs; (2) dismissed Plaintiffs' claim against Officer Defendants (Anes, Brooks, and Buehler) for cruel and unusual punishment; (3) dismissed Plaintiffs' claim for deprivation of the right to association; dismissed Plaintiffs' Section 1983 false arrest claim; (4) dismissed Plaintiff's claim for failure to adequately train; (5) dismissed Plaintiffs' claims to the extent that they are premised on theories of supervisory liability; (6) dismissed Plaintiff's Monell claim; and (7) dismissed Plaintiffs' ADA claim.

Plaintiffs subsequently filed a Second Amended Complaint ("SAC"), which is the operative complaint in this action.

　　B.　　Allegations in the SAC

Plaintiffs bring this action in a representative and individual capacity. (*See generally* Second Am. Compl. ("SAC")*,* ECF No. 67) Plaintiff Mary H. Garcia is the wife and successor-in-interest to the estate of Phillip Soto Garcia, Jr. ("Decedent"). (SAC ¶ 7.) Plaintiffs Angelo Garcia and Phillip J. Garcia are Decedent's sons. (SAC ¶¶ 10-11.)

Plaintiffs allege the following in the SAC. On March 22, 2017, several Cathedral City Police Department ("CCPD") officers responded to a 911 call to investigate "suspicious circumstances." (SAC ¶ 40.) The callers, a couple who lived next door to Decedent, advised the CCPD officers that Decedent had broken their window, that he had been outside yelling, and that they "had no explanation for his bizarre behavior." (SAC ¶ 41.)

When the responding officers arrived and made contact with Decedent, he "presented with a menacing look on his face, had blood on his clothing, was shouting vulgarities and speaking incoherently." (SAC ¶ 43.) The officers subsequently wrestled Decedent to the ground, taking him down "so hard that his head left a semi-circle of blood splatter on the concrete." (SAC ¶ 43.) Decedent was then restrained and handcuffed. (SAC ¶ 43.) According to dispatch reports, Decedent was bleeding from his mouth and had an injury to his arm at the time. (SAC ¶ 43.) After

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

**CASE NO.:** CV 5:18-00839 SJO (ASx)     **DATE:** January 11, 2019

restraining Decedent, the responding officers searched his residence. (SAC ¶ 44.) During the search, Decedent's house-mate, Dwight Walker, was found injured in his bed. (SAC ¶ 45.) Paramedics arrived and treated Decedent for the injury he sustained during the arrest. (SAC ¶ 44.) At some point, Officer Defendants contacted Decedent's wife, Mrs. Garcia, who arrived and advised the responding officers that Decedent had a history of seizures. (SAC ¶ 46.)

Decedent was then transported to Desert Regional Medical Center ("DRMC") for treatment of a "bloody nose." (SAC ¶ 47.) While at DRMC, Decedent was medically evaluated and deemed "okay to book." (SAC ¶ 47.) During the ride to the booking site, Defendant Brooks witnessed Decedent beating his own head against the protective barrier. (SAC ¶ 54.) Prior to arrival, Decedent was taken back to DRMC for a second medical evaluation in response to a second advisement from Mrs. Garcia regarding Decedent's history of seizures. (SAC ¶ 47.) Decedent underwent a CT scan of his head, the results of which showed a "closed head injury." (SAC ¶ 48.) During his second medical evaluation, Decedent was "physically aggressive" and "received a mild medication to attempt to calm him." (SAC ¶ 48.)

After being discharged from DRMC at 11:34 a.m. on March 22, 2017, Decedent was taken for booking to the Larry D. Smith Correction Facility ("LSCF"). (SAC ¶ 50.) The booking officer indicated on the inmate classification intake sheet that Decedent suffered from current medical and mental health issues, that medical and mental health staff had been notified, and that the intake deputy was seeking permission from his supervisor to assign Decedent to specialized housing. (SAC ¶ 81.) Decedent was then placed in Sobering Cell #1, where he remained for approximately 18 hours. (SAC ¶ 52.) He was not provided food, water, or medical attention during that time. (SAC ¶ 52.) While in Sobering Cell #1, Decedent exhibited erratic behavior which included "tearing down ceiling tiles and hanging from the ceiling." (SAC ¶ 52.)

At approximately 6:15 a.m. on March 23, 2017, a Deputy fired 30 rounds of pepperballs into Sobering Cell #1. (SAC ¶ 53.) Another Deputy then deployed a Stinger grenade at Decedent, at which point Decedent ran to the other side of the cell, where he was tackled by several other Deputies. (SAC ¶¶ 53-54.) Decedent was then put into a 4-point Emergency Restraint Chair ("ERC"). During the process of restraining Decedent to the ERC, in addition to punching Decedent multiple times, Deputies used a Stun Shield, a taser, the salivary gland pressure point maneuver, and carotid restrain hold. (SAC ¶ 55-56.) Once in the ERC, Decedent was moved to Safety Cell #3, where he remained for approximately three hours. (SAC ¶ 69.)

At 9:00 a.m. Decedent was seen by Adelaide Alpin, a mental health worker, who recommended him for transfer to Riverside University Health Services ("RUHS"). (SAC ¶ 88.) At approximately 1:21 p.m., Decedent was transferred to the Detention Health Unit at RUHS, where his primary admitting diagnosis was rhabdomylosis (the rapid destruction of skeletal muscle) and acute kidney injury, neither of which existed at the time Decedent was originally deemed "ok to book." (SAC ¶¶ 77.) While at RUHS, Decedent's limbs remained completely restrained until the time of his

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

CASE NO.: <u>CV 5:18-00839 SJO (ASx)</u>  DATE: <u>January 11, 2019</u>

death. (SAC ¶ 74.) Decedent died at 3:06 a.m. on March 24, 2017. (SAC ¶ 74.) The causes of death were: sudden death in schizophrenia; rhabdomyolysis in association with physical exertion by subject and application of control methods; seizure disorder; and hypertensive cardiovascular disease; homicide; and self-initiated physical exertion with control methods applied by law enforcement while in custody. (SAC ¶ 79.)

II.   <u>LEGAL STANDARD</u>

   A.   <u>Motion to Dismiss</u>

Under Rule 12(b)(6), an action may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal is appropriate if the plaintiff does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court may consider both the complaint and documents attached to the complaint. *See United States v. Ritchie,* 342 F.3d 903, 908 (9th Cir. 2003). The Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the Court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008); *see also Twombly, 550 U.S.* at 555 (requiring "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Turner v. City & Cty. of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015). However, "a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." *Parker v. Nishiyama*, 438 Fed. Appx. 642, 643 (9th Cir. 2011) (quoting *Broam v. Bogan,* 320 F.3d 1023, 1026 n.2 (9th Cir. 2003)).

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986); *see Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

///
///
///
///

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority     _____
Send     _____
Enter     _____
Closed     _____
JS-5/JS-6     _____
Scan Only     _____

**CASE NO.:** <u>CV 5:18-00839 SJO (ASx)</u>      **DATE:** <u>January 11, 2019</u>

     B.     <u>42 U.S.C. § 1983: Civil Action for Deprivation of Rights</u>

42 U.S.C. § 1983 ("Section 1983") creates a cause of action for the vindication of federal rights. Section 1983 provides that:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To state a claim under section 1983, a plaintiff must allege (1) a violation of a Constitutional or federal statutory right, and (2) that the "alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Conclusory allegations, unsupported by facts, have consistently been rejected as insufficient to state a claim under the Civil Rights Act. *Sherman v. Yakahi*, 548 F.2d 1287, 1290 (9th Cir. 1977). Here, there is no dispute that City Defendants and County Defendants were acting under color of state law when they arrested, transported, and detained Decedent. The analysis will therefore turn on whether Plaintiffs have sufficiently alleged violations of their constitutional rights. The Court analyzes the parties' arguments below.

III.     <u>ANALYSIS</u>

In the instant Motion, Defendants seek to dismiss two causes of action in the SAC, the allegations of Defendants' use of excessive force, and the allegations of the failure to intervene because there is no duty to intervene absent excessive force. The Court addresses the two causes of action in turn.

     A.     <u>Excessive Force</u>

"[T]o succeed on [a] claim of excessive use of force, [a] plaintiff must prove each of the following factors by a preponderance of the evidence: (1) Defendants used force on plaintiff; (2) Defendants' use of force was unreasonable in light of the facts and circumstances at the time; (3) Defendants knew that using force presented a risk of harm to plaintiff, but they recklessly disregarded plaintiff's safety by failing to take reasonable measures to minimize the risk of harm to plaintiff; and (4) Defendants' conduct caused some harm to plaintiff." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2471 (2015). The standard for an excessive force claim is heavily fact-dependent. At the motion to dismiss stage, the Court only must determine if Plaintiffs have alleged sufficient facts, which if true, would sustain an excessive use of force cause of action.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

**CASE NO.:** CV 5:18-00839 SJO (ASx)        **DATE:** January 11, 2019

The Court holds that Plaintiffs' SAC contains enough allegations against Defendants to survive the instant Motion.  As a threshold matter, Plaintiffs clearly plead enough facts to show that Defendants acted with excessive force.  Specifically, Defendants purportedly fired on Decedent with pepperball saturation rounds (SAC ¶ 143), placed stinger grenades in the cell where Decedent was being held, punched Decedent, and forcibly restrained Decedent in an emergency restraint chair (SAC ¶ 71).  In taking these actions, including use of a stinger grenade or pepperball saturation rounds, Defendants purportedly acted with knowledge of a risk of harm to the Decedent.  Because of this treatment, Decedent sustained injuries that led to his death.

Defendants make three main arguments as to why Plaintiffs do not sufficiently plead a cause of action for use of excessive force. First, Defendants insist that their actions were not unreasonable in light of the facts and circumstances of Decedent's condition.   This is a mixed question of law and fact that requires further discovery to answer.  On the one hand, Plaintiffs have alleged that Decedent suffered from seizures and mental disabilities and that he reacted strongly to being placed in a cell after being arrested. The Decedent purportedly exhibited bizarre behavior, sought to tear down ceiling tiles, banged his head against  the cell wall, and was suffering from a psychotic episode.  (SAC ¶ 54.)  In light of this behavior, Decedent may have posed a threat to Defendants.  On the other hand, Decedent was restrained in a cell while exhibiting some of his erratic behavior.  Plaintiffs have a plausible argument to make that Decedent did not pose a threat to any of the officers.  The Court cannot  rule whether Defendants did or did not act with excessive force in the absence of further discovery.

Second, Defendants argue that Plaintiffs' allegations do not distinguish between each of the individual officers.  Although the Court acknowledges that Plaintiffs do make general allegations against all of the officers that were purportedly involved in Decedent's arrest and the subsequent abuse that Decedent suffered, Plaintiffs also have referred to specific actions taken by some of the individual Defendants.   For example, Defendant Figueroa purportedly deployed a stinger grenade at Decedent. (SAC ¶ 56.) Defendant Lopez purportedly used a stun shield on Decedent immediately after Defendant Figueroa used a stun grenade.  (SAC ¶ 57.)  Defendant Cordero purportedly tackled the Decedent and punched him.  (SAC ¶ 60.)  Defendant Llanos purportedly restrained the Decedent in the emergency restraint chair.  (SAC ¶ 61.)   Defendant Hinson purportedly punched the Decedent in the face.  (SAC ¶ 62.)  These factual allegations are sufficient at the present stage of litigation.  It is unfair to expect Plaintiffs to know the specific actions taken by each individual Defendant.  This would place an unworkable pleading standard on Plaintiffs, especially in a case like this one, where Plaintiffs bring causes of action on behalf of a deceased family member.  If future discovery reveals that certain Defendants were not actively involved in deploying excessive force against Decedent, the Court can dismiss the individual Defendants at that time.

Third, Defendants argue that they are entitled to qualified immunity.  "In determining whether an officer is entitled to qualified immunity, [the Court] employ[s] a two-step test: first, [the Court]

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

CASE NO.:  CV 5:18-00839 SJO (ASx)          DATE: January 11, 2019

decide[s] whether the officer violated a plaintiff's constitutional right; if the answer to that inquiry is 'yes,' [the Court] proceed[s] to determine whether the constitutional right was 'clearly established in light of the specific context of the case' at the time of the events in question." *Mattos v. Agarano*, 661 F.3d 433, 440 (9th Cir. 2011) (quoting *Robinson v. York*, 566 F.3d 817, 821 (9th Cir. 2009)).

The Court holds that making a ruling on qualified immunity would be premature at the instant stage of litigation. As noted above, Plaintiffs have alleged sufficient information to make out a cause of action for use of excessive force by Defendants. These allegations necessarily meet the first prong of the qualified immunity test. Moreover, assuming the truth of the allegations in the SAC, it would have been clear to a reasonable officer that the conduct against Decedent was unlawful. *Cabral v. Cty. of Glenn*, 624 F. Supp. 2d 1184, 1192 (E.D. Cal. 2009). In other words, Decedent's right to be free from excessive force was clearly-established.

The Court therefore **DENIES** the Motion as to Plaintiffs' excessive force cause of action. Because the failure to intervene cause of action also rests on the excessive force claim, the Court **DENIES** the Motion as to the failure to intervene cause of action.

IV.   RULING

The Court **DENIES** Defendants' Motion (ECF No. 69).

IT IS SO ORDERED.