1  Arthur K. Cunningham, SBN 97506
      E-Mail: Arthur.Cunningham@LewisBrisbois.Com
2  LEWIS BRISBOIS BISGAARD & SMITH LLP
   650 East Hospitality Lane, Suite 600
3  San Bernardino, California 92408
   Telephone: (909) 387-1130
4  Facsimile: (909) 387-1138

5  Christopher D. Lockwood, SBN 110853
      E-Mail: Christopher.Lockwood@AriasLockwood.com
6  ARIAS & LOCKWOOD
   1881 S. Business Center Drive, Suite 9A
7  San Bernardino, CA  92408
   Telephone: (909) 890-0125
8  Facsimile: (909) 890-0185

9  Attorneys for Defendants Sergeant Ayala, Deputy Figueroa, Deputy Pearson, Deputy
   Lopez, Deputy Cordero, Deputy Llanos, Deputy Hinson, Deputy Caverley, Deputy
10  Rodarteo-Lugo, Deputy Miranda, Deputy Varoni, Deputy Maldonado, Deputy Kramer,
   Deputy Tarango, Deputy Steele, Deputy Bergert, Deputy Tesillo

11

12

13                UNITED STATES DISTRICT COURT

14               CENTRAL DISTRICT OF CALIFORNIA

15  MARY H. GARCIA, individually and as       )   CASE NO.:   5:18 CV 839 SJO (ASx)
    successor-in-interest to Estate of Phillip )
16  Soto Garcia, Jr. (Deceased); ANGELO        )   MEMORANDUM OF CONTENTIONS
    GARCIA; and PHILLIP J. GARCIA,            )   OF FACT AND LAW
17                              Plaintiff,    )
                                              )
18                  vs.                       )
                                              )
19  SERGEANT AYALA et al,                      )
                                              )
20                              Defendants.    )
                                              )
21                                             )
   _____           )
22

23

24

25

26

27

28

                                    i

# TABLE OF CONTENTS

I      Statement of Facts ........................................................................................1

II.  Legal Contentions ...........................................................................................7

    A. Summary of Plaintiffsø Claims ................................................................7

    B. Use of Force Claims .................................................................................7

    C.  Intervention Claim ...................................................................................8

    D.  Medical Care Claim .................................................................................9

    E.  Fourteenth Amendment Liberty Interest Claim .......................................9

    F.  Qualified Immunity ...............................................................................11

    G.  Damages Issues .....................................................................................12

III.  Jury Trial .....................................................................................................13

IV.  Attorneyøs Fees ............................................................................................13

V.  Evidentiary Issues ..........................................................................................13

VI.  Bifurcation of Issues .....................................................................................13

VII.  Abandonment of Issues ...............................................................................14

ii

1

**TABLE OF AUTHORITIES**

2

**Federal Cases**

3

Acevedo v. City of Anaheim, 2016 U.S. Dist. Lexis 1379 (C.D. Cal. 2016) ...................10

4

Ashcroft v. al-Kidd, 463 U.S. 731 (2011). .......................................................................11

5

Borges v. Cty. of Humboldt, 2017 U.S. Dist. Lexis 129966 (N.D.Cal. 2017)...................13

6

Boyd v. Cnty. of Riverside, 2016 U.S. Dist. Lexis 150683 (C.D. Cal. 2016) ...................8

7

Brosseau v. Haugen, 543 U.S. 194 (2004)........................................................................12

8

Bryan v. MacPherson, 630 F.3d 805 (9th Cir. 2010). ......................................................8

9

Chaudhry v. City of Los Angeles, 751 F.3d 1096 (9th Cir.) ............................................12

10

City & Cnty. of San Francisco v. Sheehan, 135 S. Ct. 1765 (2015)................................12

11

City of Los Angeles, Cal. v. Chaudhry, 135 S. Ct. 295 (2014) .......................................12

12

Cruz v. Palacios, 406 Fed. Appx. 172 (9th Cir. 2010) ...................................................10

13

Cunningham v. Gates, 229 F.3d 1271 (9th Cir. 2000) .....................................................9

14

Estate of Gonzalez v. Hickman, 2007 U.S. Dist. Lexis 84390 (C.D. Cal. 2007)..............13

15

Estate of Lopez v. Torres, 105 F. Supp. 3d 1148 (S.D. Cal. 2015) .................................9

16

Farha v. Silva, 2011 U.S. Dist. Lexis 15625 (E.D. Cal. 2011)......................................9

17

Forrester v. City of San Diego, 25 F.3d 804 (9th Cir. 1994)...........................................8

18

Fuller v. Meghean, 675 Fed. Appx. 786 (9th Cir. 2017).................................................7

19

Gordon v. Cty. of Orange, 888 F.3d 1118 (9th Cir. 2018) .............................................9

20

Gonzalez v. City of Anaheim, 747 F.3d 789 (9th Cir. 2014). ...................................10, 11

21

Graham v. Connor, 490 U.S. 386 (1989)..........................................................................8

22

Gregory v. County of Maui, 523 F.3d 1103 (9th Cir. 2008) ...........................................8

23

Hammer v. Gross, 932 F.2d 842 (9th Cir. 1991 en banc) ...............................................8

24

Harrison v. Hedgpeth, 2014 U.S. Dist. Lexis 1114 (N.D. Cal. 2014). ...........................9

25

Hayes v. County of San Diego, 736 F.3d 1223 (9th Cir. 2013). .....................................10

26

Jones v. Las Vegas Metro. Police Dep't, 873 F.3d 1123 (9th Cir. 2017)....................10, 12

27

Kingsley v. Hendrickson, 135 S. Ct. 2466 (2015) ........................................................7, 8

28

<u>Lau v. Kekuaokalani</u>, 2017 U.S. Dist. Lexis 116365 (Haw. 2017) ....................................9

<u>Lipscomb v. Rynerson</u>, 2014 U.S. Dist. Lexis 15155 (E.D. Cal. 2014). ...........................9

<u>Manzanillo v. Moulton</u>, 2014 U.S. Dist. Lexis 135827 (N.D. Cal. 2014) ........................8

<u>Miramontes v. Del Cruz</u>, 713 Fed. Appx. 539 (9th Cir. 2017)..............................................7

<u>Moreland v. Las Vegas Metro. Police Dep't</u>, 159 F.3d 365 (9th Cir. 1998) ....................12

<u>Nelson v. City of Los Angeles</u>, 2018 U.S. Dist. Lexis 114651 (C.D. Cal. 2018)..............9

<u>Oien v. County of San Bernardino</u>, 680 Fed. Appx. 530 (9th Cir. 2017) ........................10

<u>O'Neal v. San Bernardino Cty. Sheriff's Dep't,</u> 714 Fed. Appx. 754 (9th Cir. 2018)..........7

<u>Peralta v. Fresno Cnty.</u>, 2017 U.S. Dist. Lexis 34906 (E.D. Cal. 2017) ...........................9

<u>Porter v. Osborn</u>, 546 F.3d 1131 (9th Cir. 2008) ..............................................................10

<u>Rodriguez v. Cty. of L.A.</u>, 891 F.3d 776 (9th Cir. 2018) .....................................................7

<u>Tatum v. Moody</u>, 768 F.3d 806 (9th Cir. 2014)...............................................................11

<u>Turner v. Graff</u>, 2012 U.S. Dist. Lexis 116631 (N.D. Cal. 2012). .....................................8

<u>Wallace v. Garibay</u>, 2018 U.S. Dist. Lexis 201769 (C.D. Cal. 2018) ...............................8

<u>White v. Roper</u>, 901 F.2d 1501 (9th Cir. 1990) ..................................................................8

<u>Wilkinson v. Torres</u>, 610 F.3d 546 (9th Cir. 2010)...........................................................10

<u>Wilson v. Layne</u>, 526 U.S. 603, 614-615 (1999). .............................................................12

<u>Zion v. Cty. of Orange</u>, 874 F.3d 1072 (9th Cir. 2017) ...................................................10

**Federal Statutes**

42 U.S.C. Section 1988...................................................................................................13

**California Statutes**

Penal Code Sec. 4011.6 ....................................................................................................5

# I

## STATEMENT OF FACTS

On March 22, 2017, Phillip Garcia attacked his housemate, 87-year-old Dwight Walker, seriously injuring him while he lay helpless in his bed.  Neighbors called 911, and Cathedral City Police Department (CCPD) officers responded.  Mr. Garcia assaulted the officers and was slammed to the pavement during the course of his arrest.  He was taken to Desert Regional Medical Center, evaluated by the emergency room staff, provided a CT of his head (reported as normal), and was deemed "ok to book."  The documents provided by the hospital to Off. Brooks, and by him to jail medical staff, did not indicate that he had received any medications or that he required any ongoing medical treatment.

CCPD Officer Brooks brought Mr. Garcia to the Larry Smith Correctional Facility in Banning.  There, Mr. Garcia was evaluated by a nurse before entering the intake area, and cleared for booking.  During booking, however, Mr. Garcia gave odd responses to routine questions and the booking deputies determined that he was possibly under the influence.  He was placed in a sobering cell at 12:40 p.m. At 6 p.m., he was evaluated by medical staff and no concerns were noted.

Mr. Garcia's cell was deemed a holding cell as of 9:40 p.m., and he remained in the same physical location.  He was still hostile and aggressive.  The cell has a padded floor, toilet/sink/water fountain, and a privacy wall blocking the view of persons looking in the cell door's window of the occupant when they are using the toilet.  No one was housed with Mr. Garcia while he was in this cell.

The deputies who were involved in intake of Mr. Garcia, made the decision to place him in a sobering cell, and made the decision to transition that sobering cell to a holding cell went off duty at approximately 6:15 a.m. on March 23, 2017.

None of these jail medical or custody staff members are defendants in this action.

The Defendant deputies and sergeant came on duty at 5:45 a.m. on March 23, 2017.  They were briefed by the shift they replaced and Dep. Pearson and Sgt. Ayala were advised that Mr. Garcia was agitated, and verbally abusive.  Sgt. Ayala and Dep. Pearson

observed Garcia in the cell, and saw him slam his head against the window of the cell door, and attempt to remove a ceiling light fixture inside the cell by standing on the privacy wall, cutting his hands and making them bleed in the process.  He hit the cell window with his hands, leaving blood marks on the window.  He was obviously a danger to himself and in need of evaluation.

Sgt. Ayala and Dep. Pearson attempted to reason with Mr. Garcia and get him to stop injuring himself, and to allow them to handcuff him and remove him from the cell, without success.  For his own safety, it was important to remove him from the cell and restrain him so that medical and mental health staff could evaluate him.

Pepperballs, which when they break open release a powdered pepper substance that irritates the eyes and nose, were launched at the threshold of the cell by Dep. Pearson with the planned effect that this irritant would make Mr. Garcia more willing to cooperate with cuffing.  This manner of deploying the pepperballs only released the powdered pepper substance; no pepperballs entered the cell or struck Mr. Garcia.  The intended effect did not happen, and Mr. Garcia continued to hit the window, yell threats, and refuse to cooperate.  Since Mr. Garcia would not cooperate with cuffing, so that he could be evaluated, other methods would be needed.

The Emergency Response Team is trained on extracting belligerent, uncooperative and potentially dangerous inmates from cells.  The ERT was summoned, supervised by Sgt. Ayala, and led by Team Leader Dep. Steele.  ERT members left their usual assignments throughout the jail, and gathered in the locker room to gear up and receive a briefing.  Those who were assigned to enter the cell put on gas masks and biohazard suits to avoid contact with Garcia's blood and bodily fluids.

Further efforts were made to talk Mr. Garcia into complying with handcuffing, but they were not successful.  Therefore, ERT would have to make entry and put him in handcuffs.

To make entry safer, a "stinger grenade distraction device," which emits a loud noise and expels several small rubber balls, was thrown into the cell.  At the time Mr.

Garcia was in the left front corner of the cell; the stinger was thrown to the left rear corner. Once the stinger went off, Mr. Garcia attempted to run from the cell, even making it past the doorway before he was pushed back inside.  Contrary to Plaintiffsø claims, he did not have his õhands raisedö at the time and was not trying to surrender.

Of the seventeen (17) named Defendants, six (6) ultimately entered the cell: Lopez (shield); Bergert, Cordero, Hinson and Rodarte-Lugo (cuff team; each was responsible for an arm or leg); and last, briefly, Figueroa, who deployed the Taser one time for five seconds.

From entry to exit, the struggle in the cell lasted for approximately two minutes. The uses of force inside the cell were:

É  Lopez ó Dep. Lopez was holding a plastic shield.  The shield can be energized to deliver a current, but this function was not used.  Dep. Lopez was in the front of the line of deputies who were to enter the cell, and when Mr. Garcia attempted to rush out of the cell, Lopez pushed him back inside, using the shield.  He attempted to use his body weight to keep Mr. Garcia on the floor, but Mr. Garcia was able to sit up, and the Taser was then used by Dep. Figueroa.  Once Mr. Garcia had been cuffed, the shield was passed out of the cell.

É  Hinson ó Dep. Hinson used 4-5 distraction punches to Mr. Garciaøs face/back while attempting to cuff Mr. Garcia who was attempting to pull his hands away, tensing and sitting up; Dep Hinson also attempted, but did not apply, a carotid restraint. During this period Mr. Garcia, despite the efforts of the deputies, sat up; he was then Tasered one time by Dep. Figueroa.  This gave the cuff team the opportunity to successfully restrain and handcuff Garcia.

É  Cordero ó While Dep. Cordero was attempting to cuff Garcia, Mr. Garcia grabbed his gas mask and released the seal between the mask and his face.  Dep. Cordero punched him three times to the upper abdomen to distract him from doing this.  The Taser use was afterward.

- Bergert – While Dep. Bergert was attempting to cuff Mr. Garcia, Mr. Garcia was trying to push up and was keeping his hand away, under his body. Dep. Bergert struck him 2-5 times in the face/back of the head in order to gain compliance and succeed in cuffing.

- Figueroa – Dep. Figueroa used the Taser, in "dart mode" to get Mr. Garcia to release his hands so he could be handcuffed. Only one of the Taser darts stuck to the skin. The Taser was activated, once, for five seconds.

Once the handcuffs were applied, the deputies brought Mr. Garcia to his feet and escorted him out of the cell to an ERC (emergency restraint chair). The ERC is designed so that a person handcuffed with their hands behind them can be seated in the chair, and secured in it with shoulder/waist and leg straps.

Once Mr. Garcia was placed in the ERC, the deputies attempted to secure his legs, and the shoulder and waist straps. Force used while Mr. Garcia was being secured in the ERC was:

- Dep. Steele was standing behind the chair. Mr. Garcia grabbed at Dep. Hinson's Hazmat suit, and Dep. Steele struck Mr. Garcia 3-4 times in the head/upper torso to get him to release his grip. Deputy Steele also applied a control hold called a "salivary gland pressure point" which involves placing fingers inside the jaw line along the lower jaw. This hold makes it uncomfortable to turn one's head, preventing spitting, biting, etc., and helping to reduce movement of the head and upper body.

- When Mr. Garcia was being placed in the chair, he grabbed Dep. Hinson's right hand; Dep. Hinson struck him 4 times on the right side of his abdomen to get him to let go.

- In the Safety Cell, in order to restrain Garcia while he was receiving medical treatment, was being transferred from handcuffs to arm restraints, and for purposes of cuffing for transport, Deputies Pearson and Varoni also separately and briefly applied the salivary gland control hold.

4

Throughout his time in the Safety Cell, Mr. Garcia remained agitated, moving his arms and legs (within the limits of the ERC) dynamically, shouting curses and threats to jail staff and medical staff.

Defendants who did not use **any** force on Mr. Garcia are:

- Sgt. Ayala
- Dep. Caverly
- Dep. Kramer
- Dep. Llanos
- Dep. Maldonado
- Dep. Miranda
- Dep. Tarango
- Dep. Tesillo-Nunez

Once Mr. Garcia was secured in the ERC, he was placed in the Safety Cell at 6:35 a.m. There, he was seen by mental health staff (at 6:38 a.m.) and medical staff (at 7 a.m.). Nurse Angel Martin saw Mr. Garcia three times in the space of 2½ hours, and the single Taser prong was removed and the puncture wound cleaned. Mr. Garcia's handcuffs were removed and, against his vigorous efforts, his arms were placed on the ERC's armrests, at 8 a.m. Efforts to provide Mr. Garcia with a "range of motion" – taking one arm at a time out of cuffs or restraints and moving the limb – were deemed too hazardous in light of his ongoing agitation and the difficulties that had accompanied restraining him in the first place.

At 9 a.m., mental health staff determined that Mr. Garcia should be transferred to RUHS, the County hospital, for a mental health evaluation under Penal Code Sec. 4011.6. He was transported in the ERC by van by Deps. Tesillo-Nunez and Galvan, and arrived at the hospital's Emergency Room at 10:05 a.m.

Mr. Garcia remained at the hospital under the care of hospital medical staff. As ordered by medical staff, he was placed in four point restraints. Among other things he had removed an IV line and thereafter had to be given medications by intramuscular

injection.  While nursing staff was present at his bedside, Mr. Garcia suffered a cardiac arrest at 2:16 a.m.  Feverish efforts to resuscitate Mr. Garcia followed until 3:06 a.m., when he was pronounced dead.

Following Mr. Garcia's death, an autopsy was performed by Dr. Scott McCormick, and a neuropathology examination was conducted by Dr. Cho Lwin.  The final diagnosis was:

I.     Sudden Death in Schizophrenia

II.    Rhabdomyolysis

III.   Seizure disorder, not otherwise specified

IV.    Hypertensive cardiovascular disease

CAUSE OF DEATH:  SUDDEN DEATH IN SCHIZOPHRENIA

OTHER SIGNIFICANT CONDITIONS: RHABDOMYOLYSIS IN ASSOCIATION WITH PHYSICAL EXERTION BY THE SUBJECT AND APPLICATION OF CONTROL METHODS; SEIZURE DISORDER; HYPERTENSIVE CARDIOVASCULAR DISEASE

None of the Plaintiffs lived with Mr. Garcia at the time of his death.  Before litigation came to mind, Ms. Garcia told CCPD Off. Brooks at the scene of the arrest that "I live somewhere else. My husband and I separated three years ago."  She did claim that she was a caretaker for Mr. Walker and came to the house daily.

The house shared by Mr. Garcia and Mr. Walker was owned in joint tenancy by the two of them, because a few years earlier, Mr. Walker had executed a joint tenancy deed giving Mr. Garcia that interest.  The death of Mr. Garcia, of course, made Mr. Walker once again the sole owner of the premises.

Four days after the death of Mr. Garcia, Mrs. Garcia visited Dwight Walker, accompanied by a notary public, at the hospital where he still remained receiving treatment for his injuries inflicted by Mr. Garcia.  There, she obtained his signature on a deed quitclaiming (gifting) his entire interest in his Cathedral City home to Ms. Garcia.

# II. LEGAL CONTENTIONS

## A. SUMMARY OF PLAINTIFFS' CLAIMS

The Court previously dismissed all state law claims and previously dismissed all claims against the County of Riverside and the supervisor County employees.  (Docket number 60, pages 11-17; docket number 57)

Plaintiffs assert the following federal law claims against the remaining Defendants:

1.  Mary Garcia as successor in interest to Estate of Phillip Soto Garcia Jr. asserts use of excessive force and failure to summon medical care.  The use of force claim is redundantly asserted as a Fourth Amendment claim, a wrongful death claim and an excessive force claim.   As a subset of the use of force claim she also asserts failure to intervene and a redundant claim of failure to protect.

2.  All Plaintiffs assert a 14th amendment association claim.

## B. USE OF FORCE CLAIMS

Mary Garcia as successor in interest asserts redundant claims based on the use of force labeled Fourth Amendment, excessive force and wrongful death.  An objective reasonableness standard applies to any use of force claim concerning a pre-conviction detainee.  Kingsley v. Hendrickson, 135 S. Ct. 2466, 2472-2473 (2015) (an objective reasonableness standard applies to claims of use of excessive force concerning a pre-conviction detainee); Rodriguez v. Cty. of L.A., 891 F.3d 776, 788 (9th Cir. 2018); O'Neal v. San Bernardino Cty. Sheriff's Dep't, 714 Fed. Appx. 754 (9th Cir. 2018); Miramontes v. Del Cruz, 713 Fed. Appx. 539 (9th Cir. 2017); Fuller v. Meghean, 675 Fed. Appx. 786 (9th Cir. 2017).  Kingsley stated that factors to consider include "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting."  135 S.Ct. at 2473.

Inmates in a jail are required to comply with jail rules and with orders from jail guards.  Reasonable force can be used to compel compliance with jail rules and with

1  orders.  <u>White v. Roper</u>, 901 F.2d 1501, 1507 (9th Cir. 1990); <u>Boyd v. Cnty. of Riverside</u>,

2  2016 U.S. Dist. Lexis 150683, *50-53 (C.D. Cal. 2016); <u>Wallace v. Garibay</u>, 2018 U.S.

3  Dist. Lexis 201769 (C.D. Cal. 2018); <u>Turner v. Graff</u>, 2012 U.S. Dist. Lexis 116631 (N.D.

4  Cal. 2012).

5       Whether a use of force is reasonable is viewed from the perspective of the deputy on

6  the scene, based on information known or reasonably believed by the deputy at the time,

7  rather than in hindsight and with the benefit of additional information obtained after the

8  fact. <u>Graham v. Connor</u>, 490 U.S. 386, 396 (1989); <u>Kingsley</u>, 135 S.Ct. at 1274.  The court

9  and jury's consideration of "reasonableness must embody allowance for the fact that police

10 officers are often forced to make split-second judgments--in circumstances that are tense,

11 uncertain, and rapidly evolving--about the amount of force that is necessary in a particular

12 situation." <u>Graham</u>, 490 U.S. at 396-97; <u>Kingsley</u>, 135 S.Ct. at 2474.

13      The question for the court and jury is not whether other or lesser amounts of

14 force could have been used, but only whether the force actually used was reasonable under

15 the circumstances.  <u>Forrester v. City of San Diego</u>, 25 F.3d 804, 808 (9th Cir. 1994);

16 <u>Graham v. Connor</u>, 490 U.S. 386, 395 (1989); <u>Hammer v. Gross</u>, 932 F.2d 842, 846 (9th

17 Cir. 1991 en banc); <u>Gregory v. County of Maui</u>, 523 F.3d 1103, 1107 (9th Cir. 2008);

18 <u>Bryan v. MacPherson</u>, 630 F.3d 805, 831, n. 15 (9th Cir. 2010).

19      The key evidence Defendants will present on this claim is testimony of Defendants,

20 videos, and testimony of Defendants' expert witnesses.

21 **C.  INTERVENTION CLAIM**

22      Mary Garcia as successor in interest contends all Defendants should have intervened

23 to prevent use of excessive force by other Defendants.  This claim is asserted as both an

24 intervention claim and a redundant protection claim.  Plaintiffs' contention obviously

25 requires proof that excessive force occurred.  <u>Manzanillo v. Moulton</u>, 2014 U.S. Dist.

26 Lexis 135827, *26 (N.D. Cal. 2014) (failure to intervene claim fails when there was no

27 excessive force).  It also requires proof that a specific Defendant was aware that another

28 Defendant was using excessive force and had a reasonable and realistic opportunity to

prevent it.  <u>Cunningham v. Gates</u>, 229 F.3d 1271, 1290 (9th Cir. 2000); <u>Nelson v. City of Los Angeles</u>, 2018 U.S. Dist. Lexis 114651, *36-37 (C.D. Cal. 2018); <u>Harrison v. Hedgpeth</u>, 2014 U.S. Dist. Lexis 1114, *25-27 (N.D. Cal. 2014).

The key evidence Defendants will present on this claim is testimony of Defendants, videos, and testimony of Defendants' expert witnesses.

## D.  MEDICAL CARE CLAIM

Mary Garcia as successor in interest contends Defendants should have summoned medical care.  There is a duty to summon medical care only if a deputy objectively should know an inmate has a need for immediate medical care which is not already being provided.  <u>Gordon v. Cty. of Orange</u>, 888 F.3d 1118, 1124-1125 (9th Cir. 2018) (an objective reasonableness standard applies); <u>Lau v. Kekuaokalani</u>, 2017 U.S. Dist. Lexis 116365, *7-8 (Haw. 2017) (listing elements under an objective reasonableness standard); <u>Peralta v. Fresno Cnty</u>., 2017 U.S. Dist. Lexis 34906, *5-6 (E.D. Cal. 2017).  There is no redundant obligation by multiple deputies to summon medical care if others have already summoned it or if medical personnel are already present.  (Defendants' motion in limine number 3)

There is potential liability only if failure to summon medical care caused injury, and any damages on that claim are limited to those which summoning medical care sooner would have prevented.  <u>Farha v. Silva</u>, 2011 U.S. Dist. Lexis 15625, *18 (E.D. Cal. 2011); <u>Lipscomb v. Rynerson</u>, 2014 U.S. Dist. Lexis 15155, *21-23 (E.D. Cal. 2014).

The key evidence Defendants will present on this claim is testimony of Defendants, videos, records showing that decedent was seen by medical and mental health personnel, and testimony of Defendants' expert witnesses.

## E.  FOURTEENTH AMENDMENT LIBERTY INTEREST CLAIM

All Plaintiffs assert a 14th amendment association claim.  The first element of that claim is proving a violation under the Fourth Amendment standard.  <u>Estate of Lopez v. Torres</u>, 105 F. Supp. 3d 1148, 1160-1161 (S.D. Cal. 2015) ("Because the Court finds that Plaintiffs' underlying Fourth Amendment excessive force claim fails, the instant right of

1  association claim also fails).

2  For the additional elements, Ninth Circuit cases make a distinction between

3  situations in which there is lengthy time for deliberation and situations where quick action

4  is taken.  Porter v. Osborn, 546 F.3d 1131, 1139-1140 (9th Cir. 2008) (incident lasted 5

5  minutes); Zion v. Cty. of Orange, 874 F.3d 1072, 1077 (9th Cir. 2017) (the incident did not

6  allow time for reflection).  For actions where there is not lengthy time for reflection, there

7  is liability only if the defendant's actions were done for a purpose to harm unrelated to any

8  legitimate law enforcement objective.

9  Where, as here, the officers did not have time to deliberate, a use

10  of force shocks the conscience only if the officers had a "purpose to

11  harm" the decedent for reasons unrelated to legitimate law enforcement

12  objectives. Gonzalez v. City of Anaheim, 747 F.3d 789, 797 (9th Cir. 2014).

13  Higgins violated the Fourteenth Amendment if he acted with "a

14  purpose to harm without regard to legitimate law enforcement

15  objectives." [Citation] Zion, 874 F.3d at 1077.

16  In cases like this, where officers must react quickly to a rapidly

17  changing situation, the test is whether the officers acted with a purpose

18  of causing harm unconnected to any summary law enforcement

19  objective. Jones v. Las Vegas Metro. Police Dep't, 873 F.3d 1123, 1133 (9th

20  Cir. 2017).

21  A purpose to harm unrelated to a legitimate law enforcement objective is "to

22  cause harm unrelated to the legitimate object of arrest" or to "teach a lesson" or to

23  "get even." Porter, 546 F.3d at 1140, 1141; Wilkinson v. Torres, 610 F.3d 546, 554 (9th

24  Cir. 2010); Hayes v. County of San Diego, 736 F.3d 1223, 1230 (9th Cir. 2013).

25  In contrast, legitimate law enforcement objectives include stopping a dangerous suspect

26  (Zion, 874 F.3d at 1077), self defense (Wilkinson, 610 F.3d at 554; Oien v. County of San

27  Bernardino, 680 Fed. Appx. 530, 533 (9th Cir. 2017)), and defense of others (Cruz v.

28  Palacios, 406 Fed. Appx. 172, 173 (9th Cir. 2010); Acevedo v. City of Anaheim, 2016

1
2
3

U.S. Dist. Lexis 1379, *13 (C.D. Cal. 2016)).  See <u>Gonzalez</u>, 747 F.3d at 798 (summary judgment was affirmed because the plaintiffs "produced no evidence that the officers had any ulterior motives for using force against Gonzalez").

4
5
6
7

Where there is lengthy time for reflection, Ninth Circuit cases allow liability only if the defendant's actions shock the conscience by deliberate indifference to or a reckless disregard of the plaintiff's federal constitutional rights.  <u>Tatum v. Moody</u>, 768 F.3d 806, 821 (9th Cir. 2014) (approving a jury instruction when there is time for deliberation).

8
9

The key evidence Defendants will present on this claim is testimony of Defendants, videos, and testimony of Defendants' expert witnesses.

10

**F.  QUALIFIED IMMUNITY**

11
12
13
14
15
16
17

If there is no clearly established law concerning the specific facts at issue, or if a reasonable deputy familiar with the law could believe the specific actions at issue did not violate federal law, qualified immunity applies, even if the court in hindsight finds a violation of federal law.  The United States Supreme Court repeatedly has stressed that qualified immunity analysis must not be based on general concepts; rather the question is whether settled law provides a clear answer to the deputy about how to react to the situation at issue in the case.

18
19
20
21
22
23
24

A Government official's conduct violates clearly established law when, at the time of the challenged conduct, "[t]he contours of [a] right [are] sufficiently clear" that every "reasonable official would [have understood] that what he is doing violates that right." [Citation] We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate. <u>Ashcroft v. al-Kidd</u>, 463 U.S. 731, 741 (2011).

25
26
27
28

An officer "cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in [his] shoes would have understood that he was violating it," [citation], meaning that "existing precedent . . . placed the statutory or

constitutional question beyond debate.ö [Citation] This exacting standard õgives government officials breathing room to make reasonable but mistaken judgmentsö by õprotect[ing] all but the plainly incompetent or those who knowingly violate the law.ö [Citation] <u>City & Cnty. of San Francisco v. Sheehan</u>, 135 S. Ct. 1765, 1774 (2015).

õClearly establishedö for purposes of qualified immunity means that õthe contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.ö [Citation] <u>Wilson v. Layne</u>, 526 U.S. 603, 614-615 (1999).

Qualified immunity leaves room for reasonable mistakes about what the law requires in a specific situation.  <u>Brosseau v. Haugen</u>, 543 U.S. 194, 198 (2004) (õQualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confrontedö).

## G.  DAMAGES ISSUES

Under federal law a claim based on a death is a survival claim, not a wrongful death claim.  <u>Moreland v. Las Vegas Metro. Police Dep't</u>, 159 F.3d 365, 369-370 (9th Cir. 1998); <u>Jones v. Las Vegas Metro. Police Dep't</u>, 873 F.3d 1123, 1128 (9th Cir. 2017).

Any actions which did not cause decedentøs death are only a basis for pre-death economic damages.  (Defendantsø motion in limine number 3)  Ninth Circuit cases allow recovery for the decedentøs pre-death pain and suffering to the extent actions both violate federal law *and* cause the death.  <u>Chaudhry v. City of Los Angeles</u>, 751 F.3d 1096, 1105 (9th Cir.), cert. denied sub nom. <u>City of Los Angeles, Cal. v. Chaudhry</u>, 135 S. Ct. 295 (2014) (a plaintiff may recover damages for the decedentøs pain and suffering between the time of the constitutional violation which caused a death and the death).

Damages for an association claim are based on the value of the plaintiff's loss of their association with the decedent.  <u>Borges v. Cty. of Humboldt</u>, 2017 U.S. Dist. Lexis 129966 (N.D.Cal. 2017); <u>Estate of Gonzalez v. Hickman</u>, 2007 U.S. Dist. Lexis 84390 (C.D. Cal. 2007).

Plaintiffs' trial exhibits include lost wages documents.  However, Plaintiffs expressly waived any lost wages claim in response to written discovery, produced no documents supporting it during discovery, and the law addressed above does not allow damages for lost wages.

## III. JURY TRIAL

Both sides made timely demands for trial by jury.

## IV. ATTORNEY'S FEES

The prevailing party is entitled to seek attorneys' fees pursuant to 42 U.S.C. Section 1988.

## V. EVIDENTIARY ISSUES

Most issues are addressed in motions in limine and in objections to Plaintiffs' proposed trial exhibits.

Plaintiffs settled their case with the City of Cathedral City defendants.  Defendants are entitled to an offset for that settlement.  Defendants request an order that the settlement will be an offset from any verdict in Plaintiffs' favor.  Absent that order, Defendants will be required to present the settlement to the jury.

## VI. BIFURCATION OF ISSUES

The parties have agreed to bifurcate trial of the amount of punitive damages from trial of all other issues.

## VII. ABANDONMENT OF ISSUES

As indicated above, the court previously dismissed all state law claims and all claims against the County and the County supervisor defendants.  Plaintiffs settled and dismissed all claims against the City of Cathedral City and its employees.  Plaintiffs have indicated an intent to dismiss all claims against defendants Maldonado and Kramer.

DATED: May 20, 2019                     ARIAS & LOCKWOOD


_____/s/_____

Christopher D. Lockwood
Attorneys for Defendants