TRUJILLO & TRUJILLO, APLC
Robert Trujillo, Esq. (CA SBN 148975)
Melody Trujillo, Esq. (CA SBN 165218)
41593 Winchester Road, Suite 201
Temecula, CA 92590
Tel: 951-296-9529
Email: trulaw@trujillo-law.us

Suzanne Skolnick, Esq. (CA SBN 211076)
2888 Loker Avenue East, Suite 110-F
Carlsbad, CA 92010
Tel: 760-405-4397
Email: suzanne@skolnicklawgroup.com

Lewis Khashan, Esq. (CA SBN 275906)
KHASHAN LAW FIRM
38975 Sky Canyon Drive, Suite 201
Murrieta, CA 9253
Tel: (951) 775-7279
Email:lewis@khashanlaw.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY H. GARCIA, individually and as successor-in-interest to Estate of Phillip Soto Garcia, Jr., (Deceased), et al,<br><br>v.<br><br>SERGEANT AYALA, et al,<br><br>                    Defendants. | CASE NO.: 5:18 CV 839 SJO (ASx)<br><br>PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 1 TO LIMIT TESTIMONY OF ROGER CLARK<br><br><br>Date:  June 18, 2019<br>Time:  9:00 a.m.<br>Room: 10C |

Plaintiffs, by and through counsel of record, will and hereby do offer the following Opposition to Defendants' Motion In Limine Number 1 to limit the testimony of Plaintiffs' Expert, Roger Clark.

## I. INTRODUCTION

Defendants' motion to limit Mr. Clark's testimony goes far beyond merely prohibiting Mr. Clark from testifying on "legal conclusions" and instead, attempts improperly to carve out huge portions of Mr. Clark's testimony by mischaracterizing the nature of the testimony. Defendants' motion should be denied.

## II. ROGER CLARK POSSESES THE REQUISITE QUALIFICATIONS TO TESTIFY AS AN EXPERT IN THIS CASE.

Expert testimony on police practices and the use of force has generally been found to be admissible in cases concerning police misconduct, including when the expert's opinion is based on his experience as a police officer or experience with police training standards and policies. See, e.g., Smith v. City of Hemet, 394 F.3d 689, 703 (9th Cir. 2005) (en banc) (expert submitted report regarding training of police dogs and police dog handlers, relying on California's Peace Officer Standards and Training); Davis v. Mason Cty., 927 F.2d 1473, 1484-85 (9th Cir. 1991) (testimony of plaintiffs' police practices expert that officer violated law enforcement standards properly received); Larez v. City of Los Angeles, 946 F.2d 630, 635, 647 (9th Cir. 1991).

Here, Mr. Clark is a twenty-seven-year veteran of the Los Angeles County Sheriff's Department, who retired in 1993 holding a California Peace Officer Standards and Training ("POST") Advanced Certificate and having graduated the POST Command College. (Clark Report at 34-35.) Mr. Clark also was a line officer at the Los Angeles County Men's Jail for 18 months and was promoted to Lieutenant and was assigned as Jail Watch Commander

and the Facility Training and Logistics Administrator for the jail. (Clark Report at 35.) This experience has led other courts to find that Mr. Clark is qualified as an expert in police training standards and policies. See, e.g., Day v. Cty. of Contra Costa, No. C 07-4335 PJH, 2008 WL 4858472, at *20 (N.D. Cal. Nov. 10, 2008) ("Mr. Clark's CV and Rule 26 report establish that he is generally qualified to testify as to police procedures.").

The Ninth Circuit also drew from Mr. Clark's expert report in another published case involving Police Detective Investigations, Torres, et al v. City of Los Angeles, et al., 540 F.3d 1031,1042-43 (9th Cir. 2008). See also Lopez, 2010 WL 685014, at *5 ("Based upon Clark's report and the submissions of the parties, the Court concludes that Clark's opinions are sufficiently relevant and reliable to meet the standard of Rule 702. Clark's reliance upon the POST standards is not a basis for the exclusion of his testimony."); Knapps v. City of Oakland, 647 F. Supp. 2d 1129, 1177 (N.D. Cal. 2009) (finding that the testimony of Roger Clark, "that Officer Cardoza's use of the carotid hold was unreasonable and excessive under the circumstances," "supported the conclusion that the use of this force under these circumstances was unreasonable and excessive"). Based on the foregoing, Mr. Clark is eminently qualified to render an expert opinion on police practices in the case at hand.

**III. MR. CLARK WILL NOT MAKE LEGAL CONCLUSIONS BUT CAN OPINE ON WHETHER DEFENDANTS' CONDUCT COMPLIED WITH APPLICABLE PROCEDURES AND RELEVANT LAW.**

Plaintiffs agree that Mr. Clark (and Defendant's police practices expert, Mr. Fonzi) are not permitted to give legal conclusions, however, an opinion is not objectionable just because it embraces an ultimate issue. See Fed. R. Evid. 704(a). Indeed, the Ninth Circuit

has unequivocally held that an "expert may give his opinion even if it embraces an ultimate issue to be decided by the jury." U.S. v. Rogers, 769 F.2d 1418, 1425 (9th Cir. 1985).  Here, Mr. Clark should be permitted to testify regarding whether Defendants' conduct comported with POST standards and/or federal or state law because, to the extent that Defendants are trained on POST standards and what federal and state law permits when an officer uses force, that training is relevant to whether their actions were objectively reasonable.

Mr. Clark may, within the scope of his expertise opine as to whether defendants complied with applicable procedures at the time of the incident. See Smith v. City of Hemet, supra at 702 (citing expert testimony on "whether the officers' conduct comported with law enforcement standards,...rel[ying] upon California's Peace Officer Standards and Training"); Cooke v. City of Stockton, 2017 WL 6447999, at *5 ("Clark may within the scope of his expertise opine as to whether defendants complied with applicable procedures on the night of the incident").  "A witness may refer to the law in expressing an opinion without that reference rendering the testimony inadmissible.  Indeed, a witness may properly be called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms."  Hangarter v. Provident Life and Acc. Ins. Co., 373 F.3d 998, 1017 (9th Cir. 2004).  Consistent with the limitation on not offering legal conclusions, Mr. Clark "may testify as to the forceful alternatives [the defendants] had available and what reasonably well-trained officers are taught regarding when they may use force." See, e.g., Colbert v. Cty. of Kern, No. 1:13-cv-01589-JLT, 2015 WL 8214204, at *2 (E.D. Cal. Dec. 8, 2015).  See also Cotton v. City of Eureka, Cal., No. C 08-04386 SBA,

2010 WL 5154945, at *19 (N.D. Cal. Dec. 14, 2010) (denying Defendants' motion in limine to preclude Mr. Clark from offering opinions regarding Defendants failure to comply with policies, POST standards and the law.)

Here, Defendants' motion seeks to bar all testimony from Mr. Clark regarding POST standards (See Def. MIL #1, pp. 6 & 13-14); any references to state law (Def. MIL #1, pg. 10-11) and any references to federal law (Def. MIL#1, pp. 11-12). As referenced above, those factors/standards are the very things other courts have allowed expert testimony on previously. Moreover, like POST standards, to the extent that Penal Code statutes, state and federal law are things which are taught to officers as part of their training and which guide their conduct when reacting with the use of force, Mr. Clark should similarly be permitted to reference those standards and laws as part of the officers' training and the factors to consider in determining whether the use of force was reasonable.

## IV. MR. CLARK HAS NOT MADE ANY CREDIBILITY DETERMINATIONS.

Defendants argue that Mr. Clark makes so-called improper credibility determinations. First, Mr. Clark's report makes it clear that he is not offering any opinions as to credibility of the witnesses. (Clark Report at pg. 1) Defendants next argue about disputed facts as being indicative that Mr. Clark has made credibility determinations. The contention lacks merit. First, Mr. Clark notes that he has reviewed the video of the cell extraction (Clark Report at pg. 4). Contrary to Defendants' assertion that Mr. Clark omits evidence unfavorable to Plaintiffs, Mr. Clark noted in his report that water was available to Mr. Garcia at the cell sink in the sobering cell. (Clark Report at p. 8). He also notes that

Mr. Garcia was continuously "agitated" during his confinement (Clark Report at p. 8). He also notes that Mr. Garcia was banging his head on the cell wall and standing on the privacy wall pulling at a ceiling light fixture. (Clark Report at p. 8). Thus, Defendants cannot plausibly state that Mr. Clark has ignored Mr. Garcia's conduct which led to the cell extraction. Defendants then quibble with Mr. Clark's statement that no range of motion was provided to Mr. Garcia, but admit within the same sentence that "deputies tried to provide range of motion…***but were unable to do so because of decedent's actions***". (Emphasis added, Def Motion in Limine #1, pg 7).

Furthermore, Mr. Clark has not misstated the evidence concerning Mr. Garcia's conduct when he approached the open cell door after the grenade was thrown at Mr. Garcia's feet – there is video upon which Mr. Clark relied – which shows Mr. Garcia at the threshold of the cell door with his hands on his head. Indeed, at least one defendant testified that Mr. Garcia "had his hands up" "near his head". On the issue of the carotid hold, an "attempted" carotid hold certainly can't be construed fairly to mean that no carotid hold occurred at all - which is what the defense would like all to believe. Defendants therefore seek to prohibit Mr. Clark from discussing anything about police practices and standards in general concerning carotid holds as if the "attempted" hold never occurred. Here, the defendant responsible for the "attempted" carotid hold found it significant enough to document in his use of force report. Thus, it is entirely proper for Mr. Clark to give testimony regarding the propriety of using (or attempting to use) that type of hold.

Mr. Clark did not "make up" evidence as Defendants assert. The information

regarding locating the transport van and what information was provided to hospital staff was obtained during Defendant Tesillo's deposition and summarized for Mr. Clark because the deposition transcript was not yet available at the time Mr. Clark prepared his report. As far as the weight imposed on Mr. Garcia during the extraction goes – Mr. Clark's estimate was not baseless. He notes in his report that it is an approximation and based on the collective weight of 7 deputies. The deputies admitted in their use of force reports - which were reviewed by Mr. Clark - that their body weight was used to pin Mr. Garcia and they also testified at deposition regarding their weight at the time of the extraction. Thus, Defendants can't reasonably argue that Mr. Clark's opinion was "baseless".

Plaintiffs' expert should not be forced to adopt defendants' version of the facts – which are frequently disputed by the video evidence - as true in order to testify. It is the jury that will ultimately decide the facts, and weigh the experts' opinions accordingly. If Defendants believe Mr. Clark's opinions are based on an incorrect set of facts, Defendants can challenge those opinions through cross-examination. Motions in limine are not intended for such fine-tuning of expert testimony. See Hangarter v. Provident Life and Acc. Ins. Co., 373 F.3d 998, 1017 n. 14 (9th Cir.2004) ("The factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility…") (brackets, internal quotations and citation omitted).

### V. TESTIMONY REGARDING MEDICAL/MENTAL HEALTH ISSUES - MR. CLARK SHOULD BE PERMITTED TO TESTIFY FROM THE VIEWPOINT OF A REASONABLE OFFICER ENCOUNTERING AN INJURED INMATE.

Defendants argue that Mr. Clark should not be permitted to testify regarding medical

and mental health care issues because he is not a medical expert. He is however, a police practices expert with knowledge and training regarding jail policies and procedures. Those policies and procedures provide for jail staff to do specific things when an inmate has a medical need. It is undisputed that prior to the cell extraction, the defendants believed Mr. Garcia was a danger to himself and that he needed medical care. It is also undisputed that none of the Defendants summoned for medical or mental health care to examine Mr. Garcia <u>before</u> they commenced the cell extraction. Thus, Mr. Clark's knowledge, training and experience regarding jail policy and standards for providing medical/mental health care to an inmate in need and whether the Defendants' conduct did not comport with those policies is highly relevant and appropriate for Mr. Clark to provide testimony on. Without rendering a medical opinion, Mr. Clark should be permitted to discuss the objective factors that should have formed the basis for the officers' decision regarding force and regarding whether or not to summon for medical/mental health care. (See <u>LeBlanc v. City of Los Angeles</u>, No. CV 04-8250 SVW VBKX, 2006 WL 4752614, at *10 (C.D. Cal. Aug. 16, 2006) (holding that Roger Clark should be permitted to testify that the officers's conduct violated the relevant guideline's warnings about asphyxiation and that his statements based on his experience and relevant police guidelines, that the numerically superior LAPD officers could have overpowered a lone individual without resorting to the Taser weapon, notwithstanding Colomey's claim that LeBlanc demonstrated "superhuman strength." is admissible.))

## VI. MR. CLARK'S REPORT DOES NOT STATE "CAUSE" OF DEATH.

Defendants make wholly incorrect assertions that Mr. Clark's report includes opinion that Mr. Garcia died from positional asphyxiation, a carotid restraint hold, taser, and blows to the head. (Def Motion in Limine No. 1, p. 9). <u>Nowhere does Clark say those things "caused" Mr. Garcia's death</u>. The portions cited by Defendants are purely Mr. Clark's discussion regarding how officers are trained in avoiding positional asphyxiation, using a taser or carotid hold and administering blows to a subject's head. Mr. Clark should be permitted to testify regarding how officers are trained in these subjects as it would assist the jury in determining whether their conduct was objectively reasonable.

## VII. MR. CLARK'S TESTIMONY RELATES TO PARTIES, NOT NON-PARTIES

Defendants seek to preclude Mr. Clark from testifying regarding other issues (i.e., supervision of the cell, meals, time in restraints at the hospital, training, etc.) based on incorrect assertions that all of those things relate to <u>non-parties</u>. Here, Defendant Ayala's name appeared on both the sobering and safety cell logs. Additionally, at least 5 other Defendants' names also appeared on the safety cell log. Thus, several <u>parties</u> to this action were directly involved with the supervision of Mr. Garcia in the sobering and safety cells. Thus, Mr. Clark should be able to testify regarding whether the supervision was in line with standard jail practices and procedures, along with whether any of those Defendants involved in the monitoring of Mr. Garcia provided the required nourishment to him while he was in solitary confinement. Other parties (Defendants Tesillo and Ayala) were involved with maintaining Mr. Garcia in restraints after his transfer to the hospital detention unit.

Furthermore, it is undisputed that Mr. Garcia remained in the Restraint Chair for several hours after his arrival at the hospital. Since the Restraint Chair is a use of force, Mr. Clark should be permitted to testify on the policies and practices of continued use of a restraint chair and range of motion requirements. All of the foregoing testimony directly relates to the individual liability of several of the parties in this case.

**VIII. MR. CLARK'S OPINIONS AREN'T "ARGUMENT"**

Defendants again ask this Court to preclude Mr. Clark from testifying about things that are not even contained in Mr. Clark's report. Defendants identified arguments that a specific witness should be believed (Def. MIL #1 pg. 15), however, as discussed above, nowhere in Mr. Clark's report does he opine on the credibility of any witness. Next Defendants quibble with some of the vocabulary used by Mr. Clark to describe the incident. While Plaintiffs agree that Mr. Clark can't make legal conclusions, Mr. Clark can describe the incident using his own vocabulary. Under Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) the nature of the force used is an important factor that is weighed in determining if excessive force was used. Thus, Defendants' disputes with such phrases like "forceful throw", "grabbed and thrown", "sudden, undisciplined and unabated", "piled upon", "gross departure" all represent descriptions of the nature of the force used by defendants and do not, in and of themselves reach a legal conclusion that the force used violated Constitutional standards. (See LeBlanc v. City of Los Angeles, supra at p. 10 wherein the Court stated it will permit Roger Clark to describe LeBlanc as delusional, impaired, distraught, or any other adjective that a lay person would use to

describe a person in LeBlanc's state at the time of the incident.)

Defendants also contend that Mr. Clark's statements that certain things "should not" have been done represent only personal opinion/argument. The contention lacks merit. It is clear from Mr. Clark's report that his comments are based upon his expertise regarding applicable policies and procedures and Mr. Clark cites those relevant policies therein.

## IX. OPINIONS STATED IN THE REPORT CAN BE ELABORATED UPON

Plaintiffs agree that opinions not stated in Mr. Clark's report are generally not admissible at trial. However, an expert is allowed to elaborate on opinions which are expressed in the report. <u>Lewert v. Boiron</u>, Inc., 212 F. Supp. 3d 917, 932 (C.D.Cal. 2016) ("Rule 26(a)(2)(B) 'does not limit an expert's testimony simply to reading his report' and 'contemplates that the expert will supplement, elaborate upon, and explain his report in his oral testimony"). Additionally, expert depositions are occurring so if additional information is obtained through expert depositions, then Defendants will have had fair opportunity to cross-examine Mr. Clark on those opinions.

## X. CONCLUSION

For the foregoing reasons, Plaintiffs' request that this Court deny Defendants' Motion in Limine No. 1 to Limit the Testimony of Roger Clark. Should the Court be inclined to limit Mr. Clark's testimony in any manner, the same limitations should be applied to Defendants' expert Robert Fonzi.

Respectfully submitted,

Dated:  May 24, 2019           \s\_Suzanne Skolnick_____
                               Suzanne Skolnick, Esq.
                               Attorney for Plaintiffs, Mary Garcia, et al.