TRUJILLO & TRUJILLO, APLC
Robert Trujillo, Esq. (CA SBN 148975)
Melody Trujillo, Esq. (CA SBN 165218)
41593 Winchester Road, Suite 201
Temecula, CA 92590
Tel: 951-296-9529
Email: trulaw@trujillo-law.us

Suzanne Skolnick, Esq. (CA SBN 211076)
2888 Loker Avenue East, Suite 110-F
Carlsbad, CA 92010
Tel: 760-405-4397
Email: suzanne@skolnicklawgroup.com

Lewis Khashan, Esq. (CA SBN 275906)
KHASHAN LAW FIRM
38975 Sky Canyon Drive, Suite 201
Murrieta, CA 9253
Tel: (951) 775-7279
Email: lewis@khashanlaw.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY H. GARCIA, individually and as successor-in-interest to Estate of Phillip Soto Garcia, Jr., (Deceased), et al, <br><br> v. <br><br> SERGEANT AYALA, et al, <br> Defendants. | CASE NO.: 5:18 CV 839 SJO (ASx) <br><br> PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 3 TO EXCLUDE QUESTIONS, EVIDENCE AND ARGUMENTS ABOUT IRRELEVANT AND PREDJUDICAL MATTERS. <br><br> Date: June 18, 2019 <br> Time: 9:00 a.m. <br> Room: 10C |

Plaintiffs, by and through counsel of record, hereby offer the following Opposition to Defendants' Motion In Limine Number 3 to exclude questions, evidence and argument about irrelevant and prejudicial matters.

**SUMMARY OF ARGUMENT**

Defendants filed a motion in limine #3 to exclude evidence and arguments about so-called irrelevant and prejudicial matters. Some of the matters raised by Defendants' motion were resolved pursuant to a Stipulated Order in Limine that was approved by the Court on May 20, 2019 (Docket 98). The majority of the examples and issues raised by Defendants' motion concern facts in dispute and have direct relevance to the merits of the case and address issues the triers of fact shall have to resolve. Defendants' motion should be denied in its entirety.

**I. THE *KINGSLEY* OBJECTIVELY UNREASONABLE STANDARD APPLIES**

Mr. Garcia was a <u>pre-trial detainee</u> who was subjected to an alarming sequence of events that resulted in him enduring physical and excessive abuse, pain and suffering. Under <u>Kingsley v. Hendrickson,</u> 135 S. Ct. 2466, 2472-2473 (2015), pretrial detainees must prove that the force used was objectively unreasonable.

**II.   ISSUES REGARDING IRRELEVANT AND PREJUDICIAL MATTERS OF REMOTE RELEVANCE.**

The majority of the issues raised by Defendants in their motion are based on disputed facts and have direct relevance to the issues the jury will decide.

**A. EVIDENCE IS RELEVANT IF IT HAS ANY TENDENCY TO MAKE A FACT MORE OR LESS PROBABLE**

Based upon FRE 401, evidence is relevant if:

*(a) It has any tendency to make a fact more or less probable than it would be without the evidence; and*

>  (b) *The fact is of consequence in determining the action.*

This is a very low standard. Evidence does not need to be definitive proof but only needs to tend to make a fact more or less probable.

### B. EVIDENCE MAY BE EXCLUDED UNDER FRE 403 ONLY IF ITS PREDJUDICIAL VALUE SUBSTANTIALLY OUTWEIGHS ITS PROBATIVE VALUE

Under FRE 403, the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

### C. QUESTIONS, ARGUMENTS AND EVIDENCE REGARDING USES OF FORCE AND OTHER ACTS OR OMISSIONS WHICH CAUSED INJURY OR DEATH SHOULD BE ALLOWED

The cause of Mr. Garcia's death is directly in dispute in this case. Thus, Defendants' request for an order in limine that questions, arguments and evidence concerning force "which did not cause death" be excluded would require this court to determine (at the motion in limine stage no less) the main issue in the case. In order to grant Defendants' request, this Court would have to accept (without proof) that Defendants' medical experts are correct on Mr. Garcia's cause of death. Clearly, that is not appropriate on a motion in limine. Moreover, Defendants could not have brought such a request as a summary judgment motion because a genuine issue of material fact exists with respect to the cause of death. Plaintiffs' expert, Dr. Omalu, is prepared to testify that most, if not all, of the Defendants' various uses of force caused Mr. Garcia's

injuries and resulted in his death.

In their moving papers, Defendants list several examples of testimony and evidence they wish to have excluded. Plaintiffs argue that none of the examples cited by Defendants should be excluded. In opposition, Plaintiffs contend the following:

- All force used by Defendants (pepperball saturation rounds, stinger grenade, stun shield, taser, restraint holds, body and head strikes and use of the Emergency Restraint Chair), as well as Defendants' failure to provide food, water, and range of motion exercises, the failure of deputies to protect, and the failure to summon medical care early on contributed to the injuries sustained by Mr. Garcia, the pain and suffering he endured, and ultimately caused his death.

- But for, the excessive use of force by the Defendants, Mr. Garcia would not have died.

Based on the foregoing, the Defendants cannot reasonably argue that all of the various uses of force are not relevant to Plaintiffs' claims and damages. Under <u>Jones v. Williams</u>, 297 F.3d 930, 937 n.6 (9th Cir.2002) "[M]any factors or things or the conduct of two or more persons can operate at the same time either independently or together to cause injury or damage and in such a case each may be a proximate cause." (cited in comments to Ninth Circuit Model Jury Instruction 9.2). Accordingly, Plaintiffs should be permitted to put on evidence pertaining to <u>all of the force</u> used against Mr. Garcia, as it will be for the jury to decide whether those combined forces caused Mr. Garcia's death.

### D. PLAINTIFFS CONCEDE THAT THEY WILL NOT ADDRESS "POTENTIAL HARM" FROM DEFENDANTS ACTIONS

Plaintiffs believe **all** acts and omissions of the Defendants contributed to the injuries Mr. Garcia sustained, the pain and suffering he endured, and ultimately caused his death. Plaintiffs do not intend nor have Plaintiffs ever intended to raise any issue of "potential harm." Plaintiffs concede that the stun shield's electrical charge was not used.

### E. QUESTIONS, ARGUMENTS AND EVIDENCE ABOUT THE FAILURE OF DEFENDANTS TO SUMMON MEDICAL AND MENTAL HEALTH PERSONNEL SHOULD NOT BE EXCLUDED

The requirement to summon medical or mental health care is a requirement under the law and the various policies within the Riverside County Sheriff's Department. Although it is believed Defendant Ayala had primary responsibility, it does not alleviate the duties placed upon Deputy Steele or the other Defendants to intervene to protect Mr. Garcia and to summon medical and mental health care. This failure to act by Defendants is crucial to Plaintiffs' deliberate indifference to medical needs claim.

Defendants' argument is fatally flawed because the undisputed evidence is that none of the defendants called for medical or mental health care for Mr. Garcia **before** starting the cell extraction, yet all of them were aware that he was injuring himself (banging his head on the cell window) before the extraction began because they were either briefed on it, or claim to have personally observed it. Moreover, all of the deputies are trained to call for medical help when they see an inmate in need.

Defendants cite <u>Pajas v. Cnty of Monterey</u>, 2016 U.S. Dist. Lexis 88955, 2016 WL 3648696, *42 (N.D. Cal. 2016) for the proposition that it is sufficient that *someone* notified medical care. However, in this case, it is not "if medical or mental health care were summoned", but rather, <u>when</u>. The Defendants' desire to avoid "redundant and duplicative requests" (page 6, line7) to summon medical or mental health care resulted in no requests being made **<u>until</u> <u>after</u>** Mr. Garcia was in a Sobering Cell for eighteen hours, forcibly extracted, and left in restraints, while injured and in the middle of an ongoing mental health crisis. Mr. Garcia had 32 blunt force trauma bruises on his body. Even at that point, it is disputed as to whether Defendants *delayed* in obtaining medical and mental health care for Mr. Garcia as video evidence shows that no medical provider saw him "immediately" upon placement in the safety cell, which is required by jail policy. Instead, considerable time elapsed before the door to the safety cell was ever even opened. "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they 'deny, delay, or intentionally interfere with medical treatment.'" <u>Lopez v. Smith,</u> 203 F.3d 1122, 1131 (9th Cir. 2000) (citing <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976)).

Based on the foregoing, Plaintiffs should be permitted to ask questions, make arguments and offer evidence that none of the Defendants called for medical or mental health care before the extraction began and that after the extraction began, the Defendants delayed in obtaining medical/mental health care for Mr. Garcia. Such evidence is highly relevant to Plaintiffs' claim and in fact, if such evidence were excluded, Plaintiffs would be severely prejudiced.

## F. QUESTIONS ABOUT COUNTY POLICIES AND DEFENDANTS' UNDERSTANDING OF THEM SHOULD BE ALLOWED

Plaintiffs never intended to address policies and procedures that have no connection to the causes of action or the issues in this case. However, the knowledge and implementation of those laws, policies, and procedures directly related to the actions or omissions of the Defendants is relevant to what the standard of care should be and whether they violated Mr. Garcia's constitutional rights, were deliberately indifferent to his medical needs, and failed to intervene to protect Mr. Garcia. For example, if the Defendants knew about County policies regarding providing range of motion and hydration to an inmate held in a restraint chair at the time of the incident, but they admit that they did not perform any range of motion and/or did not provide any hydration, those facts would have relevance to Plaintiffs' deliberate indifference to medical needs claim. Under Gordon v. Cty. of Orange, 888 F.3d 1118, 1125 (9th Cir. 2018) one of the elements Plaintiffs must prove is that the defendant did not take reasonable available measures to abate the risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved. Thus, facts relating to the Defendants' knowledge of jail policies and procedures would help to establish what reasonable available measures existed for the Defendants to abate the risk to Mr. Garcia's health and whether the Defendants' conduct was objectively reasonable under the circumstances.

Accordingly, all questions, argument and evidence regarding County Policies directly relating to the acts and omissions by the Defendants and their understanding of such polices should be permitted.

### G. QUESTIONS AND ARGUMENTS THAT DEFENDANTS SHOULD HAVE DIFFERENT OR MORE TRAINING SHOULD BE ALLOWED

Deputies must complete a POST certified academy. Pursuant to California Penal Code §832, Deputies have to complete and pass a test demonstrating their knowledge of the POST Learning Domains (a summary of caselaw, statutes, and policies and how to implement them). Additionally, Deputies have to participate in advanced Officer Training to maintain their employment. Plaintiffs arguments concern the training received and Defendants' failure to perform their duties and adhere to their training. The type of training Defendants received and whether their conduct complied with that training would be relevant to the determination of whether their use of force was objectively reasonable. Accordingly, questions, argument, and testimony regarding Deputy training should be allowed.

### H. QUESTIONS ASKING FOR DEFENDANTS' PERSONAL UNDERSTANDING OF THE CAUSE OF DECENDENT'S DEATH SHOULD BE ALLOWED

Defendants seek to exclude questions regarding Defendants' understanding of Mr. Garcia's death. However, a Defendants' "understanding" may have been derived from a number of other sources that don't include his attorney. It may be derived from the fact he was present during the extraction, his training and experience, talking with other deputies, sitting through subsequent training, inter-departmental memos, subsequent departmental general orders, departmental case discussions and reviews of ongoing cases against the department, or even rumor.

Additionally, while Plaintiffs will not be attempting to elicit medical cause of death testimony from a deputy, it is certainly relevant if the Deputy is aware that the coroner determined that the manner of death of Mr. Garcia was "homicide" because it goes to the Defendants' credibility, particularly when the Defendant is one of the individuals involved in the "control methods" that the County Coroner determined was a "significant condition" in the cause of Mr. Garcia's death.  Here, the County of Riverside Coroner, Dr. Scott McCormick determined that other significant conditions in the cause of Mr. Garcia's death included Rhabdomyolysis in association with physical exertion by subject and application of control methods.  The control methods that Dr. McCormick listed in the autopsy report were, (among others):  wrist and ankle restraints, rubber pellet grenade, physical impact with stun shield, electromuscular disruption device, barb deployment, saturation of pepperball rounds, and blunt impact injuries to head and neck.  Those are the control methods that were utilized by the Defendants during the cell extraction in this case.  Thus, the jury should be permitted to evaluate the credibility of Defendants and any motivation they may have to lie about the force they used on Mr. Garcia to the extent that they were aware that his death was classified a homicide.  Accordingly, this testimony and evidence should be allowed.

### I. QUESTIONS TO DEFENDANTS ON WHETHER THEY OR OTHER DEPUTIES VIOLATED STATE OR FEDERAL LAW SHOULD BE ALLOWED

Plaintiffs' claims include a claim based on failure to intervene to stop excessive force.  A law enforcement officer has an affirmative duty to intervene on behalf of a

citizen whose constitutional rights are being violated in his presence by other officers. See, Motley v. Parks, 383 F.3d 1058, 1071 (9th Cir. 2004). "Pursuant to a long line of civil cases, police officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." Cunningham v. Gates, 229 F.3d 1271, 1289-90 (9th Cir. 2000) (recognizing officers' duty to intercede where they have an opportunity to stop a violation of rights). Here, in order for Plaintiffs to prove that Defendants failed to intervene it will be necessary to show that the Defendants recognized that one of the other Defendants were violating Mr. Garcia's Constitutional rights. Thus, questions pertaining to whether the Defendant believed (based on his training and experience) that his colleague's conduct was reasonable or appropriate with respect to the force being used against Mr. Garcia is relevant to Plaintiffs' failure to intervene claim.

### J. USE OF THE WORD "HOMICIDE" SHOULD NOT BE EXCLUDED

Defense would like an undisputed fact – namely, that the manner of Mr. Garcia's death was classified as a "homicide" – to be excluded from the jury. The legal definition of "Homicide" is: *The killing of any human creature. 4 Bl. Comm. 177. The killing of one human being by the act, procurement, or omission of another. Pen. Code N. Y.* (Blacks Law Dictionary 2d.) The importance of why the term "homicide" should be permitted at trial can't be stressed enough. The coroner determined that the cause of death was "Sudden Death in Schizophrenia" but then also listed other "significant conditions", which included Rhabdomyolysis in association with physical exertion by subject and application of control methods. Since "Sudden Death in Schizophrenia" is not caused by

the "act, procurement, or omission of another" and is a condition suffered by a decedent himself, "Sudden Death in Schizophrenia" cannot be the cause of death if the means of death is homicide. The two concepts are in conflict.

Any possible jury confusion can easily be resolved by having Dr. McCormick explain why he used the term "homicide". Accordingly, the appropriate method of dealing with Defendants' concerns is not to exclude relevant and undisputed evidence but instead to let Defendants elicit testimony from Dr. McCormick regarding what he meant by that term.

## CONCLUSION

Based on the facts surrounding the death of Mr. Garcia, the arguments presented above, and the May 20, 2019 stipulation, none of the arguments presented by Defendants are grounds for limiting or excluding questions, arguments, and evidence on the issues raised in Defendants' Motion.

Therefore, Plaintiffs respectfully request that Defendants' Motion in Limine Number 3 be denied in its entirety.

Respectfully submitted,

Dated: May 24, 2019

\s\ Suzanne Skolnick
Suzanne Skolnick, Esq.
Attorney for Plaintiffs, Mary Garcia, Et al.