**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

**CASE NO.:** **CV 5:18-00839 SJO (ASx)**      **DATE:** June 7, 2019

**TITLE:**      **Mary H. Garcia et al v. County of Riverside et al.**

========================================================================

**PRESENT: THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

Victor Paul Cruz                  Not Present
Courtroom Clerk                  Court Reporter

**COUNSEL PRESENT FOR PLAINTIFFS:**      **COUNSEL PRESENT FOR DEFENDANTS:**

Not Present                       Not Present

========================================================================

**PROCEEDINGS (in chambers): ORDER DENYING PLAINTIFFS' MOTION IN LIMINE # 1**, Docket No. 84; **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION IN LIMINE # 2**, Docket No. 88; **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION IN LIMINE # 3**, Docket No. 85; **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION IN LIMINE # 1**, Docket No. 86**; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION IN LIMINE # 2**, Docket No. 87; **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION IN LIMINE # 3**, Docket No. 89.

This matter is before the Court on Plaintiffs' three motions in limine in this matter, and Defendants' three motions in limine in this matter, all of which were filed on May 14, 2019. Defendants opposed Plaintiffs' motions in separate filings on May 20, 2019. Plaintiffs opposed Defendants' motions in separate filings on May 24, 2019. For the following reasons, the Court **DENIES** Plaintiffs' Motion In Limine # 1, **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion In Limine # 2, **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion In Limine # 3, **GRANTS IN PART AND DENIES IN PART** Defendants' Motion In Limine # 1, **GRANTS IN PART AND DENIES IN PART** Defendants' Motion In Limine # 2, and **GRANTS IN PART AND DENIES IN PART** Defendants' Motion In Limine # 3.[1]

///

---

[1] The Court's Initial Standing Order provides that "[e]ach party is limited to four motions in limine, unless good cause is shown or the Court otherwise instructs." (Initial Standing Order at B-3, ECF No. 9.) In the instant case, the parties subdivide several of their motions in limine into sections. Each section then attacks the admissibility of independent sets of evidence, thereby circumventing this Court's three-motion limitation. The Court cautions the parties to strictly abide by its Initial Standing Order. In the interest of completeness, the Court addresses all of the arguments made by the parties in their motions in limine. However, the Court will not be as understanding if the parties fail to abide by the Initial Standing Order in the future.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

**CASE NO.:   CV 5:18-00839 SJO (ASx)          DATE: June 6, 2019**

I.      FACTUAL AND PROCEDURAL BACKGROUND

The instant action pertains to the death of Philip Soto Garcia, Jr. ("Decedent") while he was in the custody of law enforcement officers from the Riverside County Sheriff's Department.  Plaintiffs, Decedent's wife and two children, contend that law enforcement officers severely mistreated Decedent after arresting him and failed to secure medical and psychological care for him. According to Plaintiffs, the officers' actions ultimately resulted in Decedent's death.  Plaintiffs bring this action in a representative and individual capacity.  (*See generally* Second Am. Compl. ("SAC"), ECF No. 67.)

        A.      The Parties

Plaintiff Mary H. Garcia is the wife and successor-in-interest to the estate of Phillip Soto Garcia, Jr.  (SAC ¶ 7.) Plaintiffs Angelo Garcia and Phillip J. Garcia are Decedent's sons.  (SAC ¶¶ 10-11.)

Defendants in this action are law enforcement officers from the Riverside County Sheriff's Department who were responsible for the detainment and cell extraction of the Decedent after Decedent was arrested on March 22, 2017 and subsequently placed in "sobering cells" at a Riverside County jail.   The SAC identifies seventeen Defendants: Sargeant Ayala, Deputy Figueroa, Deputy Pearson, Deputy L. Lopez, Deputy Cordero, Deputy Llanos, Deputy Hinson, Deputy Caverley, Deputy Rodarte-Lugo, Deputy Miranda, Deputy Varoni, Deputy Maldonado, Deputy Kramer, Deputy Tarango, Deputy Steele, Deputy Bergert, and Deputy Tesillo (collectively, "Defendants").  The remaining defendants identified in the original complaint, including the officers from the Cathedral City Police Department that arrested Decedent and transferred him to the custody of the Riverside County Sheriff's Department, have been dismissed from this action.

        B.      Central Allegations In Second Amended Complaint

Plaintiffs allege the following in the SAC, the operative complaint in this action.  On March 22, 2017, several officers from the Cathedral City Police Department responded to a 911 call to investigate "suspicious circumstances."  (SAC ¶ 40.)  The callers, a couple who lived next door to Decedent, advised the officers that Decedent had broken their window, that he had been outside yelling, and that they "had no explanation for his bizarre behavior." (SAC ¶ 41.)

When the responding officers arrived and made contact with Decedent, he "presented with a menacing look on his face, had blood on his clothing, was shouting vulgarities and speaking incoherently." (SAC ¶ 43.) The officers subsequently wrestled Decedent to the ground, taking him down "so hard that his head left a semi-circle of blood splatter on the concrete." (SAC ¶ 43.) Decedent was then restrained and handcuffed. (SAC ¶ 43.)  According to dispatch reports, Decedent was bleeding from his mouth and had an injury to his arm at the time. (SAC ¶ 43.) After restraining Decedent, the responding officers searched his residence. (SAC ¶ 44.)  During the search, Decedent's house-mate, Dwight Walker, was found injured in his bed. (SAC ¶ 45.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**CASE NO.:** <u>CV 5:18-00839 SJO (ASx)</u>      **DATE:** <u>June 6, 2019</u>

Paramedics arrived and treated Decedent for the injury that he sustained during the arrest. (SAC ¶ 44.) At some point, the arresting officers contacted Decedent's wife, Plaintiff Ms. Garcia, who arrived and advised the responding officers that Decedent had a history of seizures. (SAC ¶ 46.)

Decedent was then transported to the Desert Regional Medical Center ("DRMC") for treatment for a "bloody nose." (SAC ¶ 47.) While at DRMC, Decedent was medically evaluated and deemed "okay to book." (SAC ¶ 47.) During the ride to the booking site, Decedent beat his own head against a protective barrier. (SAC ¶ 54.) Prior to arrival at the booking site, Decedent was taken back to DRMC for a second medical evaluation in response to a second advisement from Ms. Garcia regarding Decedent's history of seizures. (SAC ¶ 47.) Decedent underwent a CT scan of his head, the results of which showed a "closed head injury." (SAC ¶ 48.) During his second medical evaluation, Decedent was "physically aggressive" and "received a mild medication to attempt to calm him." (SAC ¶ 48.)

After being discharged from the DRMC at 11:34 a.m. on March 22, 2017, Decedent was taken for booking to the Larry D. Smith Correction Facility ("LSCF"), where Decedent was placed in the custody of the Riverside County Sheriff's Department. (SAC ¶ 50.) The booking officer indicated on the inmate classification intake sheet that Decedent suffered from medical and mental health issues, that medical and mental health staff had been notified, and that the intake deputy was seeking permission from his supervisor to assign Decedent to specialized housing. (SAC ¶ 81.) Decedent was then placed in Sobering Cell #1, where he remained for approximately 18 hours. (SAC ¶ 52.) He was not provided food, water, or medical attention during that time. (SAC ¶ 52.) While in Sobering Cell #1, Decedent exhibited erratic behavior, which included "tearing down ceiling tiles and hanging from the ceiling." (SAC ¶ 52.)

At approximately 6:15 a.m. on March 23, 2017, a Sheriff's deputy fired 30 rounds of pepperballs into Sobering Cell #1 in an apparent attempt to calm and control the Decedent, who continued to behave in an erratic manner. (SAC ¶ 53.) Another Sheriff's deputy subsequently deployed a stinger grenade at Decedent, at which point Decedent ran to the other side of the sobering cell, where he was tackled by several other deputies. (SAC ¶¶ 53-54.)

After these attempts at controlling and extracting Decedent failed, Sheriff's deputies placed Decedent into a 4-point Emergency Restraint Chair ("ERC"). During the process of restraining Decedent to the ERC, in addition to punching Decedent multiple times, deputies used a stun shield, a taser, the salivary gland pressure point maneuver, and carotid restrain hold. (SAC ¶ 55-56.) Once in the ERC, Sheriff's deputies moved Decedent to Safety Cell #3, where he remained for approximately three hours. (SAC ¶ 69.)

At around 9:00 a.m. on March 23, 2017, Decedent was seen by Adelaide Alpin, a mental health worker, who recommended that he be transferred to Riverside University Health Services ("RUHS"). (SAC ¶ 88.) At approximately 1:21 p.m., Decedent was transferred to the Detention

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**CASE NO.:** <u>CV 5:18-00839 SJO (ASx)</u>     **DATE:** <u>June 6, 2019</u>

Health Unit at RUHS, where his primary admitting diagnosis was rhabdomylosis (the rapid destruction of skeletal muscle) and acute kidney injury, neither of which existed at the time that Decedent was originally deemed "ok to book." (SAC ¶¶ 77.)  While at RUHS, Decedent's limbs remained completely restrained, and he stayed in this restraint until the time of his death. (SAC ¶ 74.)

Decedent died at 3:06 a.m. on March 24, 2017. (SAC ¶ 74.)  The coroner reported the causes of death as: sudden death in schizophrenia; rhabdomylosis in association with physical exertion by subject and application of control methods; seizure disorder; and hypertensive cardiovascular disease; homicide; and self-initiated physical exertion with control methods applied by law enforcement while in custody. (SAC ¶ 79.)

C.     Procedural History

After Decedent's death, Plaintiffs brought the instant lawsuit, based in large part on Decedent's treatment while in the custody of Defendants Riverside County Sheriff's deputies.  Plaintiffs bring the following causes of action against Defendants: (1) deliberate indifference to serious medical needs  under 42 U.S.C. Section 1983; (2) wrongful death due to cruel and unusual punishment under 42 U.S.C. Section 1983; (3) loss of right of association; (4) use of excessive force under 42 U.S.C. Section 1983; (5) failure to intervene under 42 U.S.C. Section 1983; and (6) failure to protect and cruel and unusual punishment under the Fourteenth Amendment and under 42 U.S.C. Section 1983.

After the filing of the SAC and the dismissal of several of the original defendants (including Cathedral City and the County of Riverside), Defendants filed the operative Answer in this lawsuit on January 16, 2019.  (Answer to SAC, ECF No. 82.)  The parties subsequently entered a period of factual discovery.

Following discovery, the parties brought the instant motions in limine.  In their motions in limine, Plaintiffs seek: (1) to exclude information concerning their relationship with Decedent's house-mate Walker, (2) to limit the testimony of Defendants' expert Robert Fonzi, and (3) to exclude information and evidence concerning Decedent and Plaintiffs' criminal history and past "bad acts." Defendants seek: (1) to limit the testimony of Plaintiffs' expert Roger Clark, (2) to limit the testimony of Plaintiffs' medical expert Dr. Bennet Omalu, and (3) to exclude certain other irrelevant and prejudicial matters.

On May, 20, 2019, the parties filed a Joint Stipulation Order In Limine, providing that they would not present evidence or argument concerning certain topics.  (*See generally* Stip. Order Limine, ECF No. 98.)  The joint stipulation does not cover any of the evidence that is subject to the instant motions in limine.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

**CASE NO.:**  <u>CV 5:18-00839 SJO (ASx)</u>    **DATE:** <u>June 6, 2019</u>

These proceedings followed.

II.    <u>LEGAL STANDARD</u>

A.    <u>Motion In Limine Standard</u>

A court may make "a definitive ruling on the record admitting or excluding evidence, either at or before trial." Fed. R. Evid. 103. Regardless of a court's initial decision on a motion in limine, it may revisit the issue at trial. *See Luce v. United States*, 469 U.S. 38, 41-42 (1984) ("[E]ven if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling."). "The Supreme Court has recognized that a ruling on a motion in limine is essentially a preliminary opinion that falls entirely within the discretion of the district court." *United States v. Bensimon*, 172 F.3d 1121, 1127 (9th Cir. 1999) (citing *Luce*, 469 U.S. at 41-42).

B.    <u>Federal Rules of Evidence 401, 402, and 403</u>

Only relevant evidence, defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence" is admissible in federal court. Fed. R. Evid. 401, 402. Evidence may be relevant even if it is redundant or cumulative, or if it relates to undisputed facts. *See Boyd v. City & Cty. of San Francisco*, 576 F.3d 938, 943 (9th Cir. 2009).

Otherwise relevant and admissible evidence may still be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. *See also Boyd*, 576 F.3d at 947.

C.    <u>Federal Rule of Evidence 404(b)</u>

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial." Fed. R. Evid. 404(b).

D.    <u>Federal Rule of Evidence 609</u>

Federal Rule of Evidence 609 governs the introduction of evidence of past criminal convictions for purposes of impeaching a trial witness. Under FRE 609(a)(1), "for a crime that, in the

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**CASE NO.:** <u>CV 5:18-00839 SJO (ASx)</u>       **DATE:** <u>June 6, 2019</u>

convicting jurisdiction, was punishable by death or by imprisonment for more than one year the evidence . . . must be admitted, subjected to Rule 403, in a civil case . . . " Under FRE 609(a)(2), "for any crime regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the elements of the crime required proving – or the witness' admitting – a dishonest act or false statement."

   C.   <u>Federal Rule of Evidence 702 and Expert Testimony</u>

Under Federal Rule of Evidence 702: "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. "[Rule 702] consists of three distinct but related requirements: (1) the subject matter at issue must be beyond the common knowledge of the average layman; (2) the witness must have sufficient expertise; and (3) the state of the pertinent art or scientific knowledge permits the assertion of a reasonable opinion." *United States v. Finley,* 301 F.3d 1000, 1007 (9th Cir. 2002).

Before admitting expert testimony, the trial court must make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 592–93 (1993).

"In determining whether expert testimony is admissible under Rule 702, the district court must keep in mind [the rule's] broad parameters of reliability, relevancy, and assistance to the trier of fact." *Sementilli v. Trinidad Corp.*, 155 F.3d 1130, 1134 (9th Cir. 1998) (internal quotation marks omitted). *See also Jinro Am. Inc. v. Secure Invests., Inc.,* 266 F.3d 993, 1004 (9th Cir. 2001) ("Rule 702 is applied consistent with the 'liberal thrust' of the Federal Rules and their general approach of relaxing the traditional barriers to opinion testimony" (internal quotation marks omitted)).

The party offering an expert witness bears the burden of establishing that Rule 702 is satisfied. *See Cholakyan v. Mercedes-Benz, USA, LLC*, 281 F.R.D. 534, 542–43 (C.D. Cal. 2012).

///
///
///
///
///
///

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**CASE NO.:**  <u>CV 5:18-00839 SJO (ASx)</u>          **DATE:** <u>June 6, 2019</u>

III.   <u>ANALYSIS</u>

   A.   <u>Plaintiffs' Motion In Limine # 1</u>

Plaintiffs' first motion in limine pertains to the exclusion of evidence or argument concerning the relationship between Plaintiffs and Decedent's house-mate, Dwight Walker.  Specifically, Plaintiffs seek to exclude evidence concerning (1) the facts and circumstances surrounding how Plaintiff Mary Garcia became the owner/possessor of the Mr. Walker's real property after Decedent's death, and (2) the facts and circumstances surrounding how Plaintiffs Phillip Garcia and Angelo Garcia became the owners/possessors of certain of Mr. Walker's property after Decedent's death. The evidence at issue includes: (1) a quitclaim deed that Mr. Walker executed after Decedent's death, bequeathing ownership of his house to Plaintiff Mary Garcia, (2) powers of attorney that Mary Garcia had with respect to Mr. Walker and his property, (3) the fact of Plaintiff Angelo Garcia living in Mr. Walker's home after Decedent's death, and (4) the fact of Mr. Walker's tools being given to Plaintiff Phillip Garcia.  According to Plaintiffs, all of this evidence is not relevant to the causes of action related to Decedent's death in police custody.  Plaintiffs contend that Defendants seek to introduce the evidence to suggest to the jury that Plaintiffs acquired Mr. Walker's property through illegitimate and illegal means.  Plaintiffs also suggest that this evidence is improper character evidence, meant to tarnish their reputation in front of the jury.  (*See generally* Plaintiffs' Mot. In Limine # 1, ECF No. 84.)

The Court **DENIES** Plaintiff's Motion In Limine # 1 for the following reasons.  First, as for evidence of the quitclaim deed that conveyed Mr. Walker's interest in his home to Plaintiff Mary Garcia, both Mary Garcia and Dwight Walker are trial witnesses in this matter.  Exchange of property between them is relevant under FRE 401 to show a source of potential witness bias.  *See Wyatt Tech. Corp. v. Malvern Instruments, Inc.*, No. CV078298ABCMANX, 2010 WL 11505684, at *23 (C.D. Cal. Jan. 25, 2010), *aff'd* 526 F. App'x 761 (9th Cir. 2013). Moreover, Mr. Walker conveyed his property to Ms. Garcia just a few days after Decedent's death.  Because the jury in this trial must adjudicate in part the quantum of damages owed by Defendants to Plaintiffs, Defendants can introduce evidence of the quitclaim deed to show Plaintiff Mary Garcia's mental state after the death of her husband.  *See Carey v. Piphus*, 435 U.S. 247, 264 (1978) (holding that damages to distress should be awarded only to compensate for actual injury, which must be proven).  For example, Defendants may argue that Ms. Garcia was not emotionally distraught and was able to engage in substantial property investments soon after her husband's death.  Plaintiffs, of course, can contradict this evidence with evidence of their own, including testimony from Ms. Garcia as to the precise circumstances in which she received Mr. Walker's home.  All of this evidence ought to be presented to the jury.  While it may be slightly prejudicial, its probative value outweighs this prejudice.

///

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**CASE NO.:   CV 5:18-00839 SJO (ASx)       DATE: June 6, 2019**

Second, the Court permits Defendants to introduce evidence of the fact that Ms. Garcia had power of attorney for Mr. Walker since 2014.  Because they are both trial witnesses in this matter, evidence of the power of attorney may be probative of witness bias, even if somewhat prejudicial.

Third, Plaintiff Angelo Garcia and his wife allegedly lived in the home owned by Mr. Walker and cared for him after Decedent's death.  Mr. Walker also conveyed some tools to Angelo Garcia and Phillip Garcia after Decedent's death.  The relationship between Mr. Walker and Angelo Garcia, as well as the exchange of property between Decedent's children and Mr. Walker, is a potential source of witness bias.  Mr. Walker is an important trial witness in this matter.

Fourth, to the extent that Plaintiffs suggest that their relationship with Mr. Walker and the exchange of property with Mr. Walker is inadmissible character evidence under FRE 404, the Court **DENIES** Plaintiffs' Motion In Limine # 1.  "Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait."  Fed. Rule Evid. 404(b).  Here, Defendants seek to introduce past acts by Plaintiffs and Mr. Walker to suggest witness bias, not to suggest that Plaintiffs are acting in conformance with a particular character trait.

Accordingly, the Court **DENIES** Plaintiffs' Motion In Limine # 1.  Although evidence of the relationship between Mr. Walker and Plaintiffs and evidence of the property exchanges between Mr. Walker and Plaintiffs could be slightly prejudicial, this evidence is probative of witness bias.

    B.    <u>Plaintiffs' Motion In Limine # 2</u>

Plaintiffs' second motion in limine seeks to preclude evidence of several past crimes and "bad acts" history.  The specific evidence is as follows: (1) Decedent's criminal history and other "bad acts," including a confrontation between the Decedent and Plaintiff Mary Garcia in 2003, a misdemeanor domestic battery charge against Decedent in 2006, Decedent's 2006 misdemeanor DUI conviction, Decedent's 2012 misdemeanor DUI conviction, and Decedent's 2008 confrontation with Plaintiff Mary Garcia; (2) Decedent's arresting charges for the March 22, 2017 incident involving Mr. Walker, which preceded Decedent's detainment and his death; (3) Plaintiff Angelo Garcia's prior criminal history and "bad acts," including a 2015 DUI conviction and vehicle-related infractions; and (4) Plaintiff Phillip Garcia's prior criminal history and "bad acts," including convictions for DUI, robbery, driving with a suspended license, safety belt violation, assault with a deadly weapon, infliction of corporal injury on a spouse, and vehicle-related infractions.  (*See generally* Plaintiffs' Mot. In Limine # 2, ECF No. 88.)

Plaintiffs seek to preclude this evidence primarily on FRE 403 and 404 grounds.  Defendants respond that they are introducing this evidence to assist the jury in calculating damages in this matter.  The Court, therefore, must determine whether the evidence is relevant and probative as to the calculation of damages, and whether its probative value outweighs its prejudicial effect.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority  _____
Send  _____
Enter  _____
Closed  _____
JS-5/JS-6  _____
Scan Only  _____

CASE NO.:  <u>CV 5:18-00839 SJO (ASx)</u>          DATE: <u>June 6, 2019</u>

The Court **GRANTS IN PART AND DENIES IN PART** this Motion, as enumerated below.

    1.   <u>Plaintiffs' Traffic and Vehicle-Related Infractions</u>

The Court **GRANTS** Plaintiffs' Motion In Limine # 2 with respect to Plaintiffs' traffic and vehicle-related violations. In their Opposition, Defendants concede that this evidence should be excluded. Accordingly, Defendants may not introduce evidence of: (1) Angelo Garcia's 2017 conviction for using a wireless device while driving, (2) Angelo Garcia's 2014 conviction for speeding, (3) Phillip Garcia's 2012 conviction for driving on a suspended license, (4) Phillip Garcia's 2013 conviction for not wearing a seatbelt, and (5) Phillip Garcia's conviction for a wrongful window covering on his vehicle.

    2.   <u>Decedent's Convictions and "Bad Acts"</u>

The Court next addresses the criminal convictions and other bad acts committed by Decedent, including the purported criminal acts that led to his arrest in 2017 and his subsequent death. This evidence includes Decedent's criminal history as well as evidence of purported misconduct by Decedent in his relationship with his spouse. The Court **GRANTS IN PART AND DENIES** the motion in limine with respect to Decedent's convictions and "bad acts."

    a.   <u>Decedent's 2006 and 2012 Misdemeanor Convictions</u>

The Court begins by addressing evidence of Decedent's 2006 and 2012 misdemeanor DUI convictions. In their briefing, Defendants do not contend that they were aware of these convictions at the time of Decedent's detainment. If they were, this would mean that these convictions could be relevant to the merits of the "excessive force" cause of action. *See Ruvalcaba v. City of Los Angeles*, 64 F.3d 1323, 1328 (9th Cir. 1995). Instead, Defendants introduce this evidence for the purpose of calculating damages. *See Lewis v. District of Columbia,* 793 F.2d 361, 363 (D.C. Cir. 1986). In this lawsuit, Plaintiffs seek both economic damages and noneconomic damages. Noneconomic damages may include evidence of the loss of an emotional bond with a family member, which could be impacted by Decedent's prior convictions and "bad acts."

In calculating noneconomic damages in cases like the instant case, courts in the Ninth Circuit permit evidence of a decedent's incarceration, to the extent that the incarceration reveals that a decedent was away from his family and could not form a relationship with them. *See Castro*, 2015 WL 4694070, at *4 ("The Court concludes that evidence concerning the fact of decedent's prior incarceration and the duration thereof is relevant to the determination of noneconomic damages."). Based on this rule, evidence of Decedent's 2006 misdemeanor DUI conviction and Decedent's 2012 misdemeanor DUI conviction will be allowed, provided that these convictions led to

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**CASE NO.:  CV 5:18-00839 SJO (ASx)          DATE: June 6, 2019**

---

Decedent's incarceration away from his family for a period of time that is not trivial. *See id*.  If Decedent was not incarcerated, the Court will not allow evidence of the past convictions because this evidence is prejudicial and of limited probative value.  For purposes of calculating damages, the conduct for which Decedent was convicted has little to do with Decedent's relationship with his family outside of requiring him to be incarcerated away from them (as opposed to say a domestic violence conviction).

        b.    <u>Evidence of Confrontations and Arrests Related To Domestic Violence</u>

The Court next analyzes the admissibility of the confrontation between the Decedent and Plaintiff Mary Garcia in 2003, a misdemeanor domestic battery charge against Decedent in 2006, and Decedent's confrontation with Plaintiff Mary Garcia in 2008.  Although Decedent never received a conviction for any of this conduct, Defendants ostensibly seek to introduce this information to show that Decedent did not have a strong relationship with his wife, thereby minimizing damages for her "loss of association" with Decedent.

Although slightly probative of this issue, these past incidents are highly prejudicial.  *See Nelson v. City of Chicago*, 810 F.3d 1061, 1069 (7th Cir. 2016) (holding that prior arrest history ha[s] "minuscule probative value on the question of [] damages" and that the "risk of prejudice from this testimony [is] enormous.")  The Court is especially troubled by the fact that the veracity of the incidents have not been proven beyond a reasonable doubt in a Court.  All of these are arrests and unproven incidents, not convictions.

The Court also notes that there is alternative evidence available to Defendants that is equally, if not more, probative on the issue of noneconomic damages, without carrying the risk of prejudice. *See Old Chief v. United States*, 519 U.S. 172, 185 (1997).  Specifically, Defendants (and Plaintiffs) can question Ms. Garcia and Decedent's children as to their relationship with Decedent, including asking questions about whether Decedent and his spouse were separated, and the amount of time that they spent with their spouse or father.

Accordingly, the Court **GRANTS** Plaintiffs' Motion with respect to evidence of the confrontation between the Decedent and Plaintiff Mary Garcia in 2003, a misdemeanor domestic battery charge against Decedent in 2006, and Decedent's confrontation with Plaintiff Mary Garcia in 2008.

///
///
///
///

        c.    <u>Decedent's Acts That Led To His Arrest in 2017</u>

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**CASE NO.:  CV 5:18-00839 SJO (ASx)**       **DATE: June 6, 2019**

The last "bad acts" evidence relates to the events that led to Decedent's arrest in 2017, including Decedent's purported attack of his house-mate Dwight Walker.  The Court will allow this evidence to be introduced.

Although these acts did not necessarily impact Decedent's relationship with his family and the issue of noneconomic damages, they are highly relevant as context for Decedent's arrest and the subsequent events that took place in custody.  Defendants were aware of Decedent's arrest once he was in custody, and the circumstances of this arrest may have influenced their response to Decedent.  "[E]vidence regarding a decedent's criminal history may be relevant and admissible in an excessive force case, provided that the officers were aware of such information at the time of incident."  *Castro*, 2015 WL 4694070, at *3 (C.D. Cal. Aug. 3, 2015).

These prior acts may also be relevant to Plaintiffs' case-in-chief.  For example, Decedent's purported acts against his house-mate may help the jury determine Decedent's mental state, which may impact whether Defendants ought to have provided medical and mental health care to Decedent in custody.

Accordingly, the Court **DENIES** Plaintiffs' Motion with respect to Decedent's acts that led to his arrest in March of 2017.

>        3.    Plaintiffs' Criminal History and "Bad Acts"

The Court finally addresses Plaintiffs' criminal history and "bad acts."  The Court **GRANTS IN PART AND DENIES IN PART** the Motion with respect to this past history.

As noted previously, criminal history or "bad acts" can be prejudicial, but they also have some probative value when considering the calculation of noneconomic damages based on a plaintiff's relationship with a decedent.  *See Crawford v. City of Bakersfield*, No. 1:14-CV-01735-SAB, 2016 WL 5870209, at *5 (E.D. Cal. Oct. 6, 2016).  For purposes of calculating noneconomic damages, evidence of incarceration may show that a plaintiff did not have an opportunity to form a strong relationship with a decedent.  *See Castro*, 2015 WL 4694070, at *4.

>        a.    Plaintiff Phillip Garcia's Criminal History

The Court will allow some of Plaintiff Phillip Garcia's past criminal history and exclude some of this history.  Plaintiff Philip Garcia's convictions for DUI, assault with a deadly weapon, and infliction of corporal injury on a spouse are not admissible because Plaintiff Phillip Garcia did not spend time incarcerated as a result of these convictions. (*See* Pl. Phillip Garcias' Responses to Interrogatories at 14-15, ECF No. 88-3.)  The prejudicial impact of these convictions outweighs any probative value.  Importantly, the convictions have nothing to do with Phillip Garcia's

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**CASE NO.:**  <u>CV 5:18-00839 SJO (ASx)</u>  **DATE:** <u>June 6, 2019</u>

relationship to Decedent, which is the only issue relevant for damages in this case. The convictions also do not involve a dishonest act or false statement, and thus would not be admissible for impeachment purposes. *See* Fed. R. Evid. 609.

Plaintiff Phillip Garcia's conviction for robbery under P.C. 211(F) is admissible because Plaintiff Phillip Garcia was incarcerated as a result of this conviction. (*See* Pl. Phillip Garcias' Responses to Interrogatories at 14-15, ECF No. 88-3.) This conviction is also admissible for purpose of impeaching Plaintiff Phillip Garcia if he takes the witness stand at trial because it is a crime that is punishable by imprisonment for more than one year. *See* Cal. Penal Code § 211; Fed. R. Evid. 609.

> b. <u>Plaintiff Angelo Garcia's 2015 DUI Conviction</u>

With respect to Plaintiff Angelo Garcia's 2015 DUI Conviction, the Court does not allow the introduction of this evidence. This is not a conviction of a crime that involved a dishonest act or false statement. *See* Fed. R. Evid. 609. Moreover, Angelo Garcia did not spend time incarcerated as a result of this conviction, which minimizes the negative effect of this conviction on his opportunity to form a relationship with Decedent. (*See* Pl. Angelo Garcias Responses to Interrogatories at 11, ECF No. 88-2.)

> 4. <u>Conclusion On Plaintiffs' Motion In Limine # 2</u>

The Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' second motion in limine. The Court **GRANTS** the Motion with respect to Plaintiffs' past vehicle and traffic-related infractions. The Court **GRANTS IN PART AND DENIES IN PART** the Motion with respect to the Decedent's criminal history and bad acts. Some of this evidence may be probative of the noneconomic damages suffered by Plaintiffs (assuming that Decedent was incarcerated after the conviction). Evidence of Decedent's arresting charges on March 22, 2017 are also relevant for purposes of providing context to the subsequent events. However, evidence of prior arrests or incidents between Decedent and his wife are prejudicial and minimally probative of noneconomic damages.

The Court **GRANTS IN PART AND DENIES IN PART** the Motion with respect to Plaintiffs' remaining criminal history and bad acts. The Court allows evidence of the convictions for which Plaintiffs received periods of incarceration. Evidence of Plaintiffs' incarceration away from Decedent is probative of noneconomic damages. Finally, the Court **DENIES** the Motion with respect to Plaintiff Phillip Garcia's past felony conviction, provided that this conviction is used for impeachment purposes.

///

> C. <u>Plaintiffs' Motion In Limine # 3</u>

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**CASE NO.:**  <u>CV 5:18-00839 SJO (ASx)</u>        **DATE:** <u>June 6, 2019</u>

Plaintiffs' third motion in limine seeks to limit the expert testimony of Mr. Robert Fonzi, Defendants' expert in police/corrections practice.  Plaintiffs do not challenge Mr. Fonzi's qualifications or expertise.  Instead, Plaintiffs argue that Mr. Fonzi does not have a basis to offer the following testimony: (1) Mr. Fonzi cannot make sweeping conclusions about the "clear custom and practice" in place at the Riverside Sheriff's Department with respect to jails, (2) Mr. Fonzi cannot opine as to whether the Sheriff's deputies in this case used "reasonable force," (3) Mr. Fonzi cannot opine as to whether the "placement and monitoring of [Decedent] was in compliance with statewide standards and practices" and that the jails polices are in compliance with Title 15 of the applicable jail standards, (4) Mr. Fonzi cannot opine as to whether law enforcement would respond in the same exact way if the circumstances in this case were repeated, and (5) Mr. Fonzi cannot testify as to any opinion that he did not state in his expert report.  (*See generally* Plaintiffs' Mot. In Limine # 3, ECF No. 85.)

The Court **GRANTS IN PART AND DENIES IN PART** this third motion in limine. The Court emphasizes that it will use the same standard for Plaintiffs' expert, Roger Clark, that it applies to Defendants' expert, Mr. Fonzi.  The two experts offer testimony and information that is responsive to the other person.

      1.    <u>Limit Expert To Opinions In His Report</u>

As a threshold matter, the Court **GRANTS** the Motion insofar as Plaintiffs seek to limit Mr. Fonzi to the opinions expressed in his report.  Although an expert is not strictly limited to the precise words contained within an expert report, it is axiomatic that an expert may not present new opinions on topics not timely included or otherwise disclosed in the expert's report. *See* Fed. R. Civ. P. 26(a)(2)(B).  This is blackletter law, and a motion in limine is unnecessary to address this point.  Nevertheless, the Court holds that Mr. Fonzi cannot testify as to topics and opinions that he did not address in his report.

      2.    <u>Testimony As To Customs and Practices of Riverside Sheriff's Department in Jails</u>

The Court next addresses Plaintiffs' argument that Mr. Fonzi ought to be precluded from testifying as to the "customs and practices" at jails in Riverside County.  The relevant language in Mr. Fonzi's report is as follows: "Based on my review of the listed materials and experience it is my opinion, as determined by standard jail practices and training, that there appears to be a clear custom and practice involving several jail components.  The specific areas that were taken into consideration involve jail operations, security, and the use of force involving Inmate Phillip Garcia." (*See* Expert Report of Robert Fonzi at 5, ECF No. 85-2.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

CASE NO.:  <u>CV 5:18-00839 SJO (ASx)</u>          DATE: <u>June 6, 2019</u>

The Court **DENIES** Plaintiffs' motion insofar as it seeks to preclude Mr. Fonzi from testifying as to "customs and practices" at the Riverside jail where Decedent was detained. Mr. Fonzi is eminently qualified by experience and has reviewed materials that an expert is permitted to review, including publications authored by the Riverside Sheriff's Department.  He plans to draw on his experience to testify about the jail's customs and practices and whether Defendants complied with these customs and practices with respect to a difficult inmate like Decedent.  At trial, Plaintiffs can cross-examine Mr. Fonzi in depth about the basis for his opinion, to attempt to show that Mr. Fonzi's expert opinion is flawed.  *See In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-2420 YGR, 2017 WL 1391491, at *5 (N.D. Cal. Apr. 12, 2017) ("At trial, the proponent of the expert bears the burden of persuading the jury that the expert's opinion is, in fact, based upon a reasonable and convincing set of assumptions, or that the underlying facts upon which the expert's opinion is based exist.")

Ultimately, the Court sees no reason to completely exclude Mr. Fonzi's testimony as to the customs and practices of the Riverside Sheriff's department and whether Defendants' complied with these customs and practices.  This conclusion is supported by the fact that Plaintiffs' expert, Mr. Roger Clark, will be offering very similar testimony.

> 3. <u>Use of Reasonable Force</u>

Plaintiffs next ask this Court to preclude Mr. Fonzi from testifying as to the ultimate legal conclusion of whether Defendants in this case used "reasonable force" against Decedent. Plaintiffs are correct that Mr. Fonzi cannot formally opine as to this legal conclusion.  Such legal opinions are the purview of the jury and this Court.  Put simply, Mr. Fonzi cannot state whether the deputies used "reasonable force" with respect to Decedent.

However, Mr. Fonzi may testify about his experience with jail management and the practical problems that jail guards face when dealing with difficult inmates.  Taking into account the facts of this case, Mr. Fonzi also may testify as to whether Defendants' actions complied with the standards that generally guide law enforcement confronting difficult inmates or detainees.  He also may testify about hypothetical situations and how officers ought to respond to difficult inmates. *See In re Lithium Ion Batteries Antitrust Litig.*, 2017 WL 1391491, at *5.  Finally, Mr. Fonzi may testify as to whether the actions of Defendants complied with applicable jail procedures and offer reasons the actions of Defendants did or did not comply with applicable procedures.  *See Cooke v. City of Stockton*, No. 214CV00908KJMKJN, 2017 WL 6447999, at *5 (E.D. Cal. Dec. 18, 2017).

Accordingly, the Court **GRANTS** the Motion with respect to the fact that Mr. Fonzi may not testify as to the ultimate legal conclusion of whether the deputies used "reasonable force."  Nevertheless, Mr. Fonzi may reach several issues that do not require stating this legal conclusion.

///

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

**CASE NO.:** <u>CV 5:18-00839 SJO (ASx)</u>          **DATE:** <u>June 6, 2019</u>

---

    4.    <u>Placement and Monitoring in Compliance with California Jail Standards</u>

The Court next addresses Plaintiffs' argument that Mr. Fonzi should not be permitted to testify as to whether the placement and monitoring of the Decedent when he was in Sheriffs' custody complied with California standards in this type of situation. For the reasons stated in the prior sections and because Plaintiffs' expert plans to testify that Defendants violated California standards by not adequately monitoring the Decedent when he was in custody, Defendants' expert Mr. Fonzi will be permitted to respond to Plaintiffs' testimony. The Court **DENIES** the Motion with respect to expert testimony as to whether the placement and monitoring of Decedent abided by applicable California jail standards.

    5.    <u>Compliance of Jail Policies with Title 15</u>

The Court **DENIES** Plaintiffs' third motion in limine with respect to Mr. Fonzi's expert opinion that Riverside County's policies at the jail where Decedent was detained complied with California Code of Regulations Title 15, which govern jails and the treatment of inmates. Mr. Fonzi plans to testify about this in response to Plaintiffs' expert's testimony that the jail policies and the actions of the officers did not comply with Title 15.

    6.    <u>Expert Opinion As To Law Enforcement Acting In Same Way as Defendants</u>

Plaintiffs ask this Court to preclude Mr. Fonzi from testifying as to whether reasonably trained law enforcement officers would have taken the same actions as Defendants in this matter. The Court **DENIES** Plaintiffs' Motion In Limine # 3 in this regard.

This expert opinion is properly within Mr. Fonzi's expertise as a person with 32 years of law enforcement experience, including as Undersheriff for the County of San Bernardino. Moreover, experts are permitted to respond to hypothetical questions that resemble the facts of a case. *See In re Lithium Ion Batteries Antitrust Litig.*, 2017 WL 1391491, at *5. Additionally, this expert opinion, as above, is offered in part to respond to Plaintiffs' expert, who plans to testify that Defendants acted in a way that reasonably trained officers would not have. For example, Plaintiffs' expert contends that "[t]o any reasonably trained and competent jail administrator or jail staff, when it was obvious that Mr. Garcia was not becoming more 'sober' within just a few hours, he should have immediately been transferred to a hospital." (Expert Report of Roger Clark at 8, ECF No. 86-1.) To respond to this expert opinion, Mr. Fonzi will be permitted to testify as to whether Defendants acted in a way that other reasonably-trained officers would have.

///
///

---

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**CASE NO.:** <u>CV 5:18-00839 SJO (ASx)</u>     **DATE:** <u>June 6, 2019</u>

7.     <u>Final Ruling On Plaintiffs' Motion In Limine # 3</u>

The Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion In Limine # 3. The Court **DENIES** the vast majority of the Motion but **GRANTS** it insofar as Defendants' expert cannot testify as to any ultimate legal conclusion and cannot testify as to any opinion that is not already covered in his expert report.

D.     <u>Defendants' Motion In Limine # 1</u>

Defendants' first motion in limine seeks to limit the expert testimony of Plaintiffs' expert Robert Clark. This motion is the converse of Plaintiffs' Motion In Limine # 3. Mr. Clark is offered as an expert in police practices. Defendants do not contend that Mr. Clark is not qualified as a general matter. Mr. Clark is eminently qualified by experience, with 27 years of experience as an officer in the Los Angeles County Sheriff's Department. Instead, Defendants contend that Mr. Clark has no basis to testify as to the following topics: (1) testimony about questions of law or legal conclusions, such as whether Defendants used "reasonable force"; (2) testimony about what Mr. Clark contends happened prior to Decedent's death in custody; (3) testimony about the medical and mental health issues from which the Decedent suffers; (4) testimony about Decedent's cause of death; (5) testimony that Defendants and other non-parties violated state law; (6) testimony that Defendants violated federal law; (7) testimony that Defendants violated Peace Officer Standards and Training ("POST") Guidelines; (8) testimony that is not expert opinion but legal argument; and (9) opinions not expressed in his expert report. (*See generally* Defendants' Motion In Limine # 1, ECF No. 86.)

The Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion In Limine # 1, as enumerated below.

1.     <u>Questions of Law Or Legal Conclusions</u>

As noted previously, an expert is not permitted to testify about ultimate legal conclusions, such as the question of whether Defendants in this case used "excessive force" with respect to Decedent. Mr. Clark, however, may testify about hypothetical situations and how officers ought to respond to difficult inmates. *See In re Lithium Ion Batteries Antitrust Litig.*, 2017 WL 1391491, at *5. Moreover, Mr. Clark may testify as to whether the actions of Defendants complied with applicable law enforcement procedures and state the reasons why the actions of Defendants did not comply with applicable procedures. *See Cooke v. City of Stockton*, No. 214CV00908KJMKJN, 2017 WL 6447999, at *5 (E.D. Cal. Dec. 18, 2017). As noted previously, the Court applies the same standards to Mr. Clark that it does to Mr. Fonzi.

Defendants raise specific statements in Mr. Clark's expert report that are not admissible. The Court declines to review every statement that Mr. Clark makes in his expert report, especially

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**CASE NO.:** <u>CV 5:18-00839 SJO (ASx)</u>        **DATE:** <u>June 6, 2019</u>

when many of the statements are lifted out of context.  Instead, the Court reiterates that  Mr. Clark may not opine as to issues of law or draw legal conclusions.  Mr. Clark, however, may opine on matters that touch on whether Defendants did violate the law.  For example, although Mr. Clark may not come out and say "Defendants used excessive force," Mr. Clark may testify that Defendants did not comply with applicable law enforcement guidelines and procedures that provide a framework on the use of "excessive force," such as the POST Guidelines.  *See Smith v. City of Hemet*, 394 F.3d 689, 703 (9th Cir. 2005) (citing expert testimony on whether an officer's conduct complied with POST Guidelines).  Mr. Clark must provide details that allow him to reach the conclusion that Defendants did not comply with POST guidelines.  In doing so, Mr. Clark may not use "judicially defined" or "legally specialized" terms in expressing his opinion.  Mr. Clark also may not state what the law is, and he may not state that the POST Guidelines are the law (because they are not).  Moreover, Defendants retain the right to cross-examine Mr. Clark about the relevance of the POST Guidelines and present to the jury the fact that the POST Guidelines are not binding law.

Accordingly, the Court **GRANTS** Defendants' Motion In Limine # 1 with respect to questions of law or legal conclusions of Plaintiffs' expert, Mr. Clark.  Just as Mr. Fonzi is not permitted to reach questions of law or legal conclusions, Mr. Clark is subject to the same restriction.

> 2.    <u>Testimony About What Happened Prior To Decedent's Death</u>

Defendants next argue that Mr. Clark should not be permitted to testify as to what happened on the days prior to Decedent's death, when Decedent was in the custody of Defendants.  This is true, because it is a topic that ought to be covered by the percipient witnesses in this matter.  Mr. Clark has no personal knowledge of what happened while Decedent was in custody.  Accordingly, Mr. Clark cannot provide factual testimony about what he believes happened and cannot reach conclusions about the credibility of one set of facts versus another.  *See Amin-Akbari v. City of Austin, Tex.*, 52 F. Supp. 3d 830, 848 (W.D. Tex. 2014).  That said, Mr. Clark is permitted to testify as to the basis of his opinions in this matter.  In doing so, Mr. Clark will necessarily state some facts of the instant case.    In other words, Mr. Clark is permitted to provide an expert opinion based on trial evidence.  *See Willis v. City of Fresno*, 680 F. App'x 589, 591 (9th Cir. 2017).  If Mr. Clark assumes facts not in evidence or misstates the record, Defendants can object at that time.

The Court **GRANTS** Defendants' Motion In Limine # 1 to the extent that Defendants seek to prevent Plaintiffs' expert from testifying about his perception of what happened while Decedent was in custody.  Nevertheless, Plaintiffs' expert must draw on trial evidence and testify as to some of these events, as a foundation for his expert opinion.

///
///
///

MINUTES FORM 11
CIVIL GEN                                    Page 17 of   26                    __ : __
                                                                    Initials of Preparer _____

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**CASE NO.:** <u>CV 5:18-00839 SJO (ASx)</u>      **DATE:** <u>June 6, 2019</u>

3.      <u>Testimony About Decedent's Medical and Mental Health Issues</u>

Defendants next contend that because Mr. Clark has no medical or mental health qualifications, he should not be able to testify about Decedent's medical and mental health condition.

The Court **GRANTS** Defendants' Motion In Limine # 1 with respect to Mr. Clark's expert opinion on Decedent's medical and mental health conditions. Mr. Clark does not have the expertise to testify as to the cause of Decedent's death. Mr. Clark is an expert on police practices, not on mental or medical health. In very similar circumstances involving the same expert, another district court in this Circuit reached the same conclusion: "Clark is not qualified to opine about medical causation, physiological effects of a TASER, the progression of asphyxiation, the medical effects of a carotid hold, or any medical opinions related to Sanchez's cause of death. Clark has no medical training, experience in medical diagnosis, or any qualifications that would permit him to address medical issues." *See Rascon v. Brookins*, No. CV-14-00749-PHX-JJT, 2018 WL 739696, at *3 (D. Ariz. Feb. 7, 2018).

As above, however, Mr. Clark will be able to base his expert testimony on facts in the record or hypothetical questions presented to him. For example, Mr. Clark can testify as to whether Defendants should have provided Decedent medical or mental health care based on applicable law enforcement guidelines. To provide an opinion on this matter, Mr. Clark must take into account facts in the record showing that Decedent suffered from certain medical or mental health issues. To the extent that Defendants seek to prevent Mr. Clark from testifying as to whether Decedent should have been provided medical or mental health care, food, or other types of treatment, the Court does not agree with Defendants. Accordingly, the Court **DENIES** Defendants' Motion In Limine # 1 with respect to whether Mr. Clark can testify as to how officers ought to have responded to Decedent, given that there are facts in the record showing that Decedent suffered from mental and medical issues. These facts are the foundation for Mr. Clark's expert opinion.

4.      <u>Testimony about Cause of Death</u>

As already noted, Mr. Clark is not permitted to provide an expert opinion about what caused Decedent's death. He is not qualified to provide this expert opinion (although he may base his expert opinion in part on the coroner's testimony as to what caused Decedent's death). The Court **GRANTS** Defendants' Motion In Limine #1 with respect to this issue.

///
///
///
///
///

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

---

**CASE NO.:   CV 5:18-00839 SJO (ASx)**          **DATE: June 6, 2019**

---

       5.      <u>Testimony about whether Actions of Parties Comported with Standard Jail Practices and Procedures</u>

Defendants seek to preclude expert testimony from Mr. Clark concerning whether the actions of Defendants (and non-parties[2]) with respect to Decedent comported with California state standards on treatment of inmates.

The Court disagrees with Defendants on this ground.   As noted *supra*, the Court permits Defendants' expert, Mr. Fonzi, to testify as to whether the actions of Defendants comported with Title 19 of the California state standards governing treatment of inmates in jails (and other such state standards such as the POST Guidelines).  Therefore, the Court permits Mr. Clark to address this matter.  Although Mr. Clark cannot definitively state whether Defendants violated California the law – this is a quintessential legal conclusion – Mr. Clark can testify as to whether the supervision of Decedent in the cell was in line with standard jail practices and procedures.

The Court **DENIES** Defendants' Motion In Limine # 1 with respect to testimony as to whether the actions of Defendants comported with California state jail practices and procedures.

       6.      <u>Testimony As To Defendants' Violation Of Federal Law</u>

As noted previously, the Court will not permit Plaintiffs' expert to reach ultimate legal conclusions, such as the issue of whether Defendants violated federal law.  The Court **GRANTS** Defendants' Motion In Limine # 1 with respect to this issue.

       7.      <u>Testimony As To Defendants' Violation of POST</u>

The Court permits Plaintiffs' expert to testify as to whether Defendants' actions in this matter complied with the POST guidelines.  In doing so, Mr. Clark cannot state that a failure to comply with professional standards is a violation of federal law, because this is a statement of legal conclusion and because this is an incorrect statement of the law.  *See Estate of Naharro v. Cty. of Santa Clara*, No. 14-CV-04570-BLF, 2016 WL 6248957, at *10 (N.D. Cal. Oct. 26, 2016) ("An officer's failure to conform to professional standards is insufficient to render her liable under the Fourth Amendment.")  However, Mr. Clark can state his expert opinion that an officer did not abide by professional standards as a means to help the jury determine whether Defendants used "excessive force."

---

[2]  Importantly, some of Defendants' names do appear on the safety cell log for the cell in which the Decedent stayed on the night that he died.  Mr. Clark is not testifying as to the treatment of Decedent by non-parties but rather parties to this action.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**CASE NO.:** <u>CV 5:18-00839 SJO (ASx)</u>      **DATE:** <u>June 6, 2019</u>

8.      <u>Argument From Witness Stand</u>

Defendants next contend that Mr. Clark should only be permitted to give expert testimony and should not be permitted to argue from the witness stand.  This is blackletter law, and the Court fails to see why Defendants bring a motion in limine in this regard.  Mr. Clark cannot opine on the credibility of witnesses or reach legal conclusions, such as whether Defendants violated the law or whether Defendants used "excessive force."

9.      <u>Opinions Not Expressed In Expert Report</u>

Defendants also bring an unnecessary argument that Mr. Clark cannot opine on matters not in his expert report.  As noted above, the Court will not allow Mr. Clark or Mr. Fonzi to present material that they did not opine on in their reports.

10.      <u>Conclusion As To Defendants' Motion In Limine # 1</u>

The Court **GRANTS IN PART AND DENIES IN PART** Defendants Motion In Limine # 1. The Court **GRANTS** Defendants' Motion In Limine # 1 with respect to  questions of law or legal conclusions reached by Plaintiffs' expert, Mr. Clark.  The Court **GRANTS** Defendants' Motion In Limine # 1 to the extent that Defendants seek to prevent Plaintiffs' expert from testifying as a percipient witness about what happened while Decedent was in custody. However, Plaintiffs' expert can rely on facts in the record to testify as to whether the actions of Defendants complied with what reasonable officers should have done in a similar situation.  The Court **GRANTS** Defendants' Motion In Limine # 1 with respect to Mr. Clark's expert opinion on Decedent's medical and mental health condition or Decedent's cause of death.   However, Mr. Clark may testify as to whether Defendants responded to the Decedent in a fashion that complied with applicable procedures and guidelines, based on facts in the record showing that Decedent suffered from certain mental or medical issues.  The Court **DENIES** Defendants' Motion In Limine # 1 with respect to testimony as to whether the actions of Defendants comported with California state jail practices and procedures, including the POST Guidelines (although Mr. Clark may not testify that these practices and procedures are legally-binding).  Finally, the Court **GRANTS** Defendants' Motion In Limine # 1 to preclude Plaintiffs' expert from offering argument from the witness stand and from expressing opinions that are not covered in his expert report.

E.      <u>Defendants' Motion In Limine # 2</u>

Defendants' second motion in limine challenges testimony offered by Plaintiffs' medical expert, Dr. Bennet Omalu.  Defendants do not challenge Dr. Omalu's qualifications or expertise – Dr. Omalu is eminently qualified as a forensic pathologist, a Clinical Professor at the University of California, Davis, and as the Director of Bennet Omalu Pathology, a legal consulting firm.   Instead, Defendants contend that Dr. Omalu does not have a basis to testify as to the following matters:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**CASE NO.:  CV 5:18-00839 SJO (ASx)**          **DATE: June 6, 2019**

(1) testimony about what happened just prior to Decedent's death, (2) testimony about the effect of a taser on Decedent, (3) testimony about Decedent's mental health issues, (4) testimony using the term "homicide" to describe Decedent's death, (5) argument from the witness stand, and (6) opinions not expressed in Dr. Omalu's expert report.  (*See generally* Defendants' Motion In Limine # 2, ECF No. 87.)

The Court **GRANTS IN PART and DENIES IN PART** this Motion, as enumerated below.

1.      Testimony About What Happened Prior to Decedent's Death

Defendants contend that "Dr. Omalu should be prohibited from testifying about what he contends happened to Decedent in Sheriffs' custody, and instead should be limited to providing testimony in response to hypothetical questions that are supported by actual trial evidence."  The Court agrees in principle with Defendants.  As noted previously in the context of Mr. Clark, Dr. Omalu cannot provide factual testimony about what actions Defendants took with respect to Decedent. For example, Dr. Omalu cannot state definitively  that Defendants used stun grenades against Decedent.  Dr. Omalu was not in the jail to witness these acts.  Dr. Omalu, however, is permitted to review evidence, and base his opinions on that evidence.  For example, Dr. Omalu can opine on Decedent's cause of death, based on the evidence before him.  Dr. Omalu should cite to the evidence when providing his expert opinion.  Of course, Defendants are free to cross-examine him as to the basis for his opinions as well.

Accordingly, the Court **GRANTS** Defendants' second motion in limine as to percipient testimony about the facts of what happened to Decedent while in Sheriff's custody.  However, Dr. Omalu can rely on trial evidence and other facts in the record to form his expert opinion.

2.      Testimony About The Effect Of Taser

Defendants next seek to preclude Dr. Omalu from testifying as to the effect of a taser on the human body, and the potential effect of a taser on Decedent in this case.  The Court **DENIES** the Motion in this regard.  This testimony is well-within Dr. Omalu's area of expertise.  Dr. Omalu is a forensic pathologist, a discipline which requires analysis of the cause of death of individuals. Dr. Omalu has "been involved in over eight thousand death and injury investigations" and has "personally conducted and performed over seven thousand autopsies and death investigations." (Dr. Omalu Expert Report at 2, ECF No. 87-1.)  Dr. Omalu also has a particular expertise in brain and head injuries, which a taser may cause.  (Dr. Omalu Expert Report at 13.)  Applying the tools that he has acquired through his years of experience, Dr. Omalu reviewed the facts of this case to form an expert opinion on the impact of a taser on Decedent. *See Claar v. Burlington N. R. Co.*, 29 F.3d 499, 502 (9th Cir. 1994) (holding that experts must show that they "arrived at their conclusions using scientific methods and procedures, and that those conclusions were not mere subjective beliefs or unsupported speculation).  As a forensic pathologist and a Clinical Professor

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

CASE NO.:  **CV 5:18-00839 SJO (ASx)**         DATE: **June 6, 2019**

with particular expertise in cerebral injuries, Dr. Omalu has the necessary qualifications to analyze the effects of a taser on Decedent.

The Court **DENIES** Defendants' second motion with respect to Dr. Omalu's testimony on the effects of a taser on Decedent.

3.    Testimony About Mental Health Issues

The Court **GRANTS** the Motion insofar as Defendants seek to prevent Dr. Omalu from drawing his own conclusions about Decedent's mental health condition.  Dr. Omalu is not a mental health expert, and he never personally examined Decedent. Therefore, Dr. Omalu cannot testify that it is his expert opinion that Decedent suffered from certain mental health conditions.  However, Dr. Omalu can base medical opinions as to Decedent's cause of death on facts in the record, including the fact that Decedent exhibited bizarre behavior at the time of his arrest. Dr. Omalu can also testify as to the medical and bodily impact of Decedent's condition, schizophrenia, because there are other independent facts in the record that reveal that Decedent suffered from this condition.

4.    Use of Word "Homicide"

The Court addresses the use of the word "homicide" in testimony in the subsequent discussion of Defendants' Motion In Limine # 3.

5.    Arguing From Witness Stand and Opinions Not In Expert Report

As noted previously, the Court will not permit argument from the witness stand.  The Court also will not allow Dr. Omalu to voice opinions that he did not express in his expert report.  These are basic requirements of expert testimony, and a motion in limine is unnecessary to confirm the Court's position on these issues.  Nevertheless, the Court **GRANTS** the Motion with respect to these issues.

F.    Defendants Motion In Limine # 3

Defendants' third motion in limine seeks to preclude several lines of purportedly prejudicial questioning by Plaintiffs based on FRE 401, 402, and 403.  Defendants seek to preclude: (1) questions and argument based on actions by Defendants that did not cause Decedent's death, (2) questions and argument about potential harms to Decedent that did not occur, (3) questions and argument about whether a particular Defendant summoned medical or mental health personnel, (4) questions and argument about County policies and Defendants' understanding of them, (5) questions and argument about the training that Defendants had received, (6) questions and argument about Defendants' understanding as to the cause of Decedent's death, (7)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

CASE NO.:  **CV 5:18-00839 SJO (ASx)**          DATE: **June 6, 2019**

questions and argument about whether Defendants violated federal law, and (8) questions and argument concerning whether to describe the Decedent's death as a "homicide."  (Defendants' Motion In Limine # 3, ECF No. 89.)

The Court **GRANTS IN PART AND DENIES IN PART** this Motion, as enumerated below.

      1.    Actions That Did Not Cause Decedent's Death

Defendants ask this Court to preclude any evidence and argument about actions by Defendants that **did not** cause Decedent's death.  Unfortunately for Defendants, this is one of the central issues in this case, and the Court cannot rule on this matter.  If the Court were to accept Defendants' medical experts as correct, then none of Defendants' actions in this matter caused decedent's death.  In these circumstances, granting the instant motion in limine would preclude all testimony that contradicts Defendants' position.  The Court declines to issue such an expansive holding.  The Court **DENIES** Defendants' Motion In Limine # 3 with respect to excluding questions and argument about actions that purportedly did not cause Decedent's death.

      2.    Potential Harms To Decedent That Did Not Occur

Plaintiffs concede that they are not planning to raise any issue of "potential harm" from Defendants' actions.  For example, Plaintiffs will not be raising issues related to the potential harm to an individual from a stun shield's electrical charge.  Although an electrical charge was present on one of the Defendants' stun shields in this case, Plaintiffs and Defendants agree that Defendants did not use this electric charge.

Accordingly, the Court **GRANTS** the Motion with respect to issues of "potential harm" and the bodily impact of an electrical charge from a stun shield.

      3.    Failure To Summon Medical and Mental Health Personnel

Defendants next contend that Plaintiffs should not be permitted to ask questions and present evidence as to Defendants' failure to summon medical and mental health personnel to treat Decedent.  Defendants' only argument in this regard is that "undisputed evidence" shows that one of Defendants notified medical and mental health personnel when Decedent was uncooperative in his cell and acted in a violent fashion.

Defendants' argument makes little sense, especially on a motion in limine.  Perhaps Defendants should have moved for summary judgment on this ground.  That aside, evidence of failing to notify and summon medical and mental health professionals is directly relevant to Plaintiffs' claim of deliberate indifference to Decedent's medical needs.  The Court therefore **DENIES** Defendants'

| | |
|---|---|
| Priority | ____ |
| Send | ____ |
| Enter | ____ |
| Closed | ____ |
| JS-5/JS-6 | ____ |
| Scan Only | ____ |

**CASE NO.:**  <u>CV 5:18-00839 SJO (ASx)</u>     **DATE:** <u>June 6, 2019</u>

Motion In Limine # 3 with respect to Defendants' purported failure to summon medical and mental health personnel.

#### 4.     <u>County Policies and Defendants' Understanding Of Them</u>

Defendants seek to preclude Plaintiffs from asking Defendants about County policies and procedures governing troublesome or mentally disturbed inmates like the Decedent.  Again, the Court declines to issue such a holding.  Defendants' knowledge of applicable policies is directly relevant to the deliberate indifference to medical needs claim.  For example, if Defendants knew that there was a County policy that required that they provide certain relief to an uncooperative inmate held in a restraint chair but the Defendants did not abide by that policy, this would help prove that the Defendants were deliberately indifferent to Decedent's medical needs.  *See Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1075 (9th Cir. 2013) (holding that a detainee or inmate must make a subjective showing that an officer or prison official "knew of and disregarded" the substantial risk of harm to the detainee or inmate).  Ultimately, evidence of Defendants' knowledge of County policies are incredibly relevant to the deliberate indifference claim.  The Court therefore **DENIES** Defendants' Motion In Limine # 3 in this regard.

#### 5.     <u>Training Of Defendants</u>

Defendants argue that Plaintiffs should not ask Defendants about the training that they received.  According to Defendants, because Plaintiffs do not bring a *Monell* claim, the issue of training is irrelevant to the instant case.

The Court disagrees with Defendants.  Although not relevant to the *Monell* claim that has been dismissed, the training that Defendants received, and whether they abided by that training, could be relevant to a deliberate indifference to medical needs claim.  For example, if Defendants had received training as to how to deal with a violent inmate with mental health problems, but Defendants did not abide by that training, this could help prove Defendants' deliberate indifference to Decedent's medical needs. *See Lemire*, 726 F.3d at 1075.  The Court therefore **DENIES** Defendants' Motion In Limine # 3 in this regard.

#### 6.     <u>Personal Understanding of the Cause of Decedent's Death</u>

The Court next addresses Defendants' argument that questions regarding Defendants' personal understanding of the cause of Decedent's death are irrelevant under FRE 401 and 402.

The Court again disagrees with Defendants on this front.  Defendants are not medical experts and are not qualified to opine on the cause of Decedent's death.  However, Defendants opinion on whether their particular actions caused Decedent's death may be relevant to the deliberate indifference to medical needs claim.  For example, if Defendants believed that use of a stun shield

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

---

**CASE NO.:   CV 5:18-00839 SJO (ASx)          DATE: June 6, 2019**

---

did not cause Decedent's death, this may reveal that they ignored signs that the stun shield caused a particular harm to Decedent. Ultimately, the Court will not engage in conjecture at this point, but the Court will hold that Defendants' understanding of what caused Decedent's death may reveal the extent to which they were deliberately indifferent to Decedent's medical needs. *See Lemire*, 726 F.3d at 1075. Therefore, the Court **DENIES** Defendants' Motion In Limine # 3 with respect to questions to Defendants concerning Defendants' knowledge of the causes of Decedent's death.

### 7.   Questions Regarding Whether Defendants Violated State Or Federal Law

The Court will not allow questioning that seeks to elicit testimony regarding Defendants' opinion as to whether they violated state or federal law. Such questioning would require a lay witness to testify as to an ultimate legal conclusion in this case. Moreover, Defendants' knowledge of whether they violated state or federal law is not relevant to any qualified immunity issues (or any other legal issues) that may arise in this case. *See Pearson v. Callahan*, 555 U.S. 223, 243 (2009) (holding that the qualified immunity standard turns on the "**objective** legal reasonableness of the action" (internal citations omitted)). The Court **GRANTS** Defendants' Motion In Limine # 3 with respect to questions to Defendants concerning whether they violated state or federal law.

### 8.   Exclusion of Term "Homicide"

Defendants finally ask this Court to exclude the term "homicide" when describing Decedent's death. According to Defendants, this word is incredibly prejudicial under FRE 403. Defendants contend that "homicide" when used in an autopsy report refers to any death which is not due to natural cases. In common understanding, on the other hand, a homicide refers to a murder or the killing of a person.

The Court declines to exclude the term "homicide," because it is undisputed that this word was used in Decedent's autopsy report. The doctor that performed the autopsy, Dr. McCormick, is a trial witness in this matter. He can explain why he used the term "homicide" and clarify its meaning as a term of art in his particular field.

Accordingly, the Court **DENIES** Defendants' Motion In Limine # 3 with respect to use of the word "homicide" at trial.

### IV.   RULING

For the reasons set out above, the Court **DENIES** Plaintiffs' Motion In Limine # 1, **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion In Limine # 2, **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion In Limine # 3, **GRANTS IN PART AND DENIES IN PART** Defendants

---

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**CASE NO.:** <u>CV 5:18-00839 SJO (ASx)</u>        **DATE:** <u>June 6, 2019</u>

 Motion In Limine # 1, **GRANTS IN PART AND DENIES IN PART** Defendants'' Motion In Limine # 2, and **GRANTS IN PART AND DENIES IN PART** Defendants' Motion In Limine # 3.

IT IS SO ORDERED.